381 So.2d 1269 (1980)
NATIONAL OIL SERVICE OF LOUISIANA, INC.
v.
Ronnie David BROWN, Bernard Roseman and John Fernandez.
No. 9740.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 1980.
Rehearing Denied April 18, 1980.
*1271 McGlinchey, Stafford, Mintz & Hoffman, Donald A. Mintz and Leopold Z. Sher, New Orleans, for plaintiff-appellant.
Monroe & Lemann, Jerry A. Brown and A. Justin Ourso, III, New Orleans, for defendants-appellees.
Before SAMUEL, LEMMON and SCHOTT, JJ.
LEMMON, Judge.
Plaintiff has appealed from a judgment denying its request to preliminarily enjoin three former employees from conducting an identical business in plaintiff's business area and to restrain them from using plaintiff's equipment, records and customer lists, from soliciting plaintiff's customers and employees, and from making derogatory statements about plaintiff's business. The issues on appeal involve alleged breaches by the employees of express and implied contractual obligations relating to their commencement of a competitive business before and after the termination of their employment.

I
Plaintiff corporation was chartered in November, 1975, and it immediately began its waste oil operations in Louisiana. The corporation was owned by Blair family, which also owned several other firms that collected waste oil throughout the southeastern states and processed the oil for resale. Defendant Fernandez, who had worked for the Blairs' Florida company for several years, was named initial manager of the Louisiana operation, and defendant Roseman was employed in October, 1977 as Louisiana sales manager.
Fernandez had been employed with the Florida company under a written contract that contained a non-competition agreement and other prohibitory conditions relating to the employee's activities after termination of employment. Jerrold Blair, plaintiff's president, testified that he and Fernandez verbally agreed to the same terms of employment with the Louisiana corporation, except for a salary increase, and that when Roseman was hired as sales manager, he and Roseman reviewed the contract of the Tampa sales manager and agreed to the same terms, except for a higher salary. Defendant Brown was a truck driver who admittedly was not employed under a written contract (although Blair testified Fernandez had been instructed to have all drivers execute written contracts). Defendants were three of the nine employees in the Louisiana operation.
Plaintiff's operation consisted essentially of collecting waste oil from area businesses by use of trucks with regularly assigned routes. Customers with large amounts of oil for collection were paid by the gallon and were signed to exclusive sales contracts, while waste oil was collected without payment to smaller customers who considered the service as a benefit. New customers were continuously solicited, and customer lists were maintained indicating frequency of collection. These customer lists also formed the basis for daily route sheets which were prepared for the drivers who were paid according to the amount of oil collected. Organization and systematic efficiency were stressed in the operations.
On May 19, 1978, without prior notice, defendants sent Blair a letter of resignation, effective immediately. Blair testified: He immediately flew to New Orleans and discovered that Fernandez had fired his most experienced driver and, along with Roseman, had pirated two other drivers and had begun an identical waste oil operation in the same area under the name of Southern Oil Service. He learned upon further *1272 investigation that defendants had copied and taken his customer lists, his route system records and many of his customer contracts; had taken pumps, tanks, pipes, hoses and fittings belonging to the company; had not performed required maintenance work on the company trucks which were in serious disrepair; had discontinued signing major customers to contracts for exclusive sale of waste oil; had collected oil from some customers, processed and sold it without remitting the sales proceeds to the company (all of the waste oil collected in normal operations was transported to Florida and processed there); had told many customers that National Oil was out of business or that National Oil's name had been changed to Southern; and had neglected to collect oil from other customers for a long period until Southern began business and then picked up the accumulated oil from these customers for Southern's account. He reported the matter to the police, who arrested defendants and recovered many of the missing items from them. He did rehire the discharged driver and one of the two that had been lured away by defendants, but he was unable to reestablish the business immediately because of the difficulty of reconstructing the missing customer and route lists. He then filed this injunction proceeding to enjoin defendants from operating the new business, soliciting plaintiff's customers or using plaintiff's records, procedures and trade secrets. The petition also reserved plaintiff's right to seek damages.
In their testimony defendants admitted they had begun planning the new business about April 1, but did not notify Blair; that they had removed some of plaintiff's records (pertaining to plaintiff's best customers, according to Blair) "just to call up possibly later"; that they had solicited all of plaintiff's experienced drivers; that they had taken 6,000 gallons of oil belonging to plaintiff, sold it, and deposited the proceeds to Southern's account, and that they had another 4,500 gallons of plaintiff's oil in their possession; that they stopped signing larger customers to contracts because the customer didn't want to be bothered (although they had identical form contracts printed for Southern's use); that they had taken some tanks, pipes, fittings and hoses which they considered abandoned; and that Fernandez had prepared the following list when they decided to start their own business:
"1) Take Contracts
2) Make duplicate Contracts
3) get Pocket Registers
4) Remove important phone numbers from rolodex
5) write phone numbers on master sheets
6) take naptha
7) test tubes and equip.
8) pull Business Cards
9) oil pipes for trucks"[1]
One of plaintiff's customers testified that he had called for a pick-up several times before May 19, because his tank was overflowing, and that defendant Brown finally collected his oil on May 23, telling him that Southern had bought plaintiff's business.

II
Plaintiff first contends defendants were prohibited by enforceable contract provisions from engaging in competitive business in the area, or alternatively, in the event the non-competition provisions are unenforceable under R.S. 23:921, from using the employer's customer lists.
Generally, in the absence of a contrary agreement, an employee is free to compete with his former employer. In Louisiana non-competition agreements are disfavored and are deemed contrary to public policy, except under circumstances outlined in R.S. 23:921 relating to the employer's expenditures of substantial amounts in training the employee or in advertising the *1273 business.[2] Under such circumstances a voluntary non-competition agreement is permitted for limited periods in limited areas.
In the present case, however, under the evidence most favorable to the prevailing party, the existence of a non-competition agreement was not proved. The only written and signed contract in evidence is one between Fernandez and a corporation other than plaintiff, and plaintiff's president's testimony as to verbal agreements on the pertinent terms was contradicted by Fernandez and Roseman. Inasmuch as there is no proved non-competition agreement, defendants were free to compete against plaintiff upon terminating their employment.
Even in the absence of a specific agreement prohibiting certain methods of competition, however, unfair methods of competition are unlawful in Louisiana. R.S. 51:1405. What constitutes unfair competition is a matter to be decided in each individual case and involves a balancing between the right of the employee to individual freedom on one hand and the right of the employer to honest and fair competition and to protection of business assets and property in the nature of trade secrets on the other hand. See generally AnnotationFormer Employer's Duty, in Absence of Express Contract, Not to Solicit Former Employer's Customers or Otherwise Use His Knowledge of Customer Lists Acquired in Earlier Employment, 28 A.L.R.3d 7 (1969).
A former employee who enters business in competition with his former employer necessarily utilizes the experience he acquired and the skills he developed while in his former employment. While the employer may by contract obtain limited protection against competition from former employees, by law he may be entitled to protection against wrongful appropriation and use by former employees of things specially developed by the employer in his business, such as lists of customers (particularly in route sales) whose regular patronage has been acquired by the employer's advertising, solicitation and organized effort. Considerations as to the type of protection to be afforded to the employer in a specific case include the manner in which and the purpose for which customer lists are compiled; the conduct and motivation of the employee before and after termination of the employment; the manner in which the customers are contacted after the termination and the nature of the representations made to the customer by the former employee; and the existence of a scheme to take over all or a substantial part of the former employer's business, or of an intent to injure the former employer's business.

III
The present case involved a business dependent upon personal contact. Although the names and addresses of the customers were generally available to the public and to others in the same business, the customers listed were those developed through the contacts and organized efforts of all of plaintiff's employees, and the lists were compiled not only to record the names of customers, but also to provide the drivers with a routine route for the purpose of efficient and systematic collection.
Moreover, in establishing their own new business, defendants exhibited a clear intent to decimate plaintiff's existing business. They copied and then destroyed plaintiff's contracts and records involving its most important customers; they converted a considerable amount of plaintiff's equipment to their own use and neglected the care of other equipment; they set up plaintiff's customers for pirating by first neglecting to collect oil and then making misrepresentations about plaintiff's going out of business; and while using plaintiff's equipment and facilities, they processed and sold oil which had been collected for plaintiff's *1274 account and retained the funds for their own account (until arrested, when they then offered to make restitution). In short defendants schemed to virtually close down plaintiff's business while starting their own, using the same customers, the same key employees, much of plaintiff's equipment and some of the capital obtained through the sale of plaintiff's oil.
One could hardly imagine more unfair methods of competition than were used in this case. The key consideration in this case is not one of individual freedom, but rather is one of basic business honesty. Prior to termination, defendants attempted to divert plaintiff's business for their own benefit, removed equipment and records, stole collected oil, and left the business in complete disarray. At time of termination they left without notice and pirated experienced employees. And after termination, they made misrepresentations and untrue statements to customers of the former employer. While perhaps no single factor would alone be considered unfair competition, the evidence (viewed in a light most favorable to the prevailing party) established a course of calculated misconduct over a considerable period of time, and plaintiff should have been granted some preliminary injunctive relief in order to prevent defendants from profiting from their misdeeds (in addition to their reserved claim for damages).
Plaintiff sought preliminary injunctive relief to prohibit defendants from:
(a) operating the business known as Southern Oil Service;
(b) soliciting plaintiff's customers;
(c) using plaintiff's confidential and privileged trade information and trade secrets;
(d) making defamatory and derogatory statements to other persons about the integrity of plaintiff and its president, employees, and agents;
(e) using equipment taken from plaintiff without its consent and permission; and
(f) enticing and hiring away plaintiff's employees.
Plaintiff was entitled to injunctive relief for Items (c) and (e) since the use of these items constitutes an invasion of plaintiff's property rights and their use would constitute unfair competition and unfair trade practices on the part of defendants. However, we affirm the refusal of injunctive relief as regards the other items.
The relief requested an Item (a) discussed above was properly denied for failure to prove a non-competition agreement.
As to the relief requested in Item (b), the evidence established that anyone who has waste oil is a potential customer of plaintiff and that plaintiff over the years has done business with hundreds of such customers. Furthermore, previous decisions have allowed former employees in soliciting customers to rely on their memory and on the general information they acquired while they were employed by plaintiff. See, for example, Gulf Toy House, Inc. v. Bertrand, 306 So.2d 361 (La.App. 3rd Cir.1975) and Theatre Time Clock, Inc. v. Steward, 276 F.Supp. 593 (E.D.La. New Orleans Div. 1967). While the trial court perhaps could have granted limited relief under the circumstances of this case, such as prohibiting use of written lists and documents taken from plaintiff, discussion of such relief at this point in time would be academic.
As to Item (d), plaintiff apparently desired to prevent misrepresentations as to its business status, rather than defamation. We need not reach the difficult question of enjoining free speech which causes damages, which is not really an issue here, and any relief as to misrepresentations by defendants is now more appropriately addressed to plaintiff's claim for damages.
As to Item (f), parties who are associated in a business or enterprise may agree that upon termination they will not hire the employees of the former joint business or enterprise, and such a contract is not in violation of R.S. 23:921. John Jay Esthetic Salon v. Woods, 377 So.2d 1363 (La.App. 4th Cir.1979). In the absence of such a contract, however, no basis generally exists for an injunction against the exercise of the basic freedom of association which is inherent *1275 in the hiring of employees and the taking of a job with an employer.
In the final analysis plaintiff is for the most part relegated to its claim for damages sustained as a result of the unfair methods of competition by which it was victimized. Moreover, the matter before the court is merely a rule for preliminary injunction, and the trial on the merits of the final injunction is not before us.
Accordingly, the judgment appealed from is affirmed in part and reversed in part and the trial judge is ordered to preliminarily enjoin the defendants from:
(1) using the confidential and privileged trade information and trade secrets of National Oil Services of Louisiana, Inc., and
(2) using equipment allegedly taken from National Oil Services of Louisiana, Inc. without its consent and permission.
This injunction is to be issued upon the trial judge's setting and plaintiff's furnishing a bond in accordance with C.C.P. art. 3610. The case is remanded to the trial court for further proceedings, and all costs are taxed against defendants.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REMANDED.
NOTES
[1] Fernandez admitted he prepared the list, but was later advised by his attorney not to take anything from plaintiff.
[2] Other types of agreements have been held enforceable and not subject to the prohibition of R.S. 23:921. These include agreements not to solicit the employer's customers, not to use the employer's customer lists, and not to disclose the employer's trade secrets. See cases reviewed in Duncan, Agreements Not to Compete, 33 La.L.Rev. 94 (1972).