560 So.2d 485 (1990)
Saeed AHMED, M.D.
v.
BOGALUSA KIDNEY CARE CENTER.
No. 89 CA 0313.
Court of Appeal of Louisiana, First Circuit.
April 10, 1990.
Writ Denied June 22, 1990.
Jesse L. Wimberly, III, Mandeville, for plaintiff-appellant Saeed Ahmed M.D.
John N. Gallaspy, Sondra A. Cheek, Bogalusa, for defendant-appellee Hossein K. Tabari, M.D., Bogalusa Kidney Center.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Plaintiffs, Dr. Saeed Ahmed and Washington Parish Dialysis Center, Inc.[1] filed *486 suit against several defendants seeking damages and injunctive relief to prevent defendants from operating a dialysis center which was competitive with the Washington Parish Dialysis Center owned by Dr. Ahmed.
Plaintiffs named as defendants Rainbow Health Care, Inc., d/b/a Bogalusa Kidney Care Dialysis Center[2]; D.L. Crain, the owner of the previously named dialysis center; and Dr. Hossein Tabari, a doctor practicing at the previously named dialysis center.
Plaintiffs alleged that the defendants were liable for damages because they enticed Dr. Tabari, the staff, and patients of the Washington Parish Dialysis Center to leave that center and go to the Bogalusa Kidney Care Dialysis Center. Plaintiffs alleged that the defendants' actions violated LSA-R.S. 51:1405, the Unfair Trade Practices Act.
After a trial on the merits, the trial judge granted the defendants' motion for a directed verdict, rendering judgment in favor of the defendants.[3] From this judgment, Dr. Ahmed appeals.
Dr. Tabari filed a peremptory exception raising the objection of res judicata for the first time in this court. The basis of Dr. Tabari's objection is as follows. On September 26, 1988, the trial judge signed a final judgment which had been prepared by Dr. Tabari's attorney; on November 3, 1988, the trial judge signed a final judgment which had been prepared by Dr. Ahmed's attorney. On November 14, 1988, Dr. Ahmed filed and was granted "a devolutive appeal from the judgment of dismissal entered on November 3, 1988." Dr. Tabari contends that because the judgment of September 26, 1988, was not appealed from, it has become final.
Initially we note that Dr. Tabari's objection to Dr. Ahmed's appeal is improperly labelled a peremptory exception raising the objection of res judicata; the exception of res judicata is properly raised in a subsequent action which is between the same parties, which is based on the same cause of action, and where the thing demanded is the same as that in a prior action. LSA-R.S. 13:4231; Grain Dealers Mutual Insurance Co. v. Hardware Dealers Mutual Fire Insurance Co., 196 So.2d 650, 653 (La.App. 1st Cir.1967). In the case sub judice, there is only one action, and thus, the exception of res judicata is inapplicable. Dr. Tabari's objection deals with whether this court has jurisdiction over this appeal on the basis that Dr. Ahmed did not file his motion for appeal as to the trial court's judgment within the statutory delays, such that the trial court's judgment has become final.
The judgment of September 26, 1988 was a valid final judgment, and the trial court had no authority to render the second final judgment of November 3, 1988 which was practically identical to the first judgment and adjudicated the same issues. Cox v. Kirkpatrick, 393 So.2d 1284 (La. App. 1st Cir.1980), writ granted in part on other grounds, denied in part, 396 So.2d 926 (La.1981).
Thus, the judgment of November 3, 1988 should be vacated. However, we will not dismiss the appeal because it was taken from the judgment of November 3, 1988. The November 3, 1988 judgment was the same as the judgment of September 26, 1988. Because Dr. Ahmed appealed from a judgment which is identical to the prior judgment from which a valid appeal could be maintained and which adjudicated the same claims, Dr. Tabari and the other defendants are not prejudiced by the maintenance of Dr. Ahmed's appeal since the issues raised by Dr. Ahmed in his appeal are the same as to either judgment. Furthermore, the delays for appeal have not even begun to run on the September 26, *487 1988 judgment since the plaintiffs filed a request for notice of judgment and the record does not show that notice of judgment was ever sent as required by LSA-C. C.P. art. 1913. Were we to dismiss the appeal, Dr. Ahmed could still appeal from the September 26, 1988 judgment since the delays for appeal have not begun to run. LSA-C.C.P. arts. 1913, 1974, 2087; Oceaneering International, Inc. v. Black Towing, Inc., 457 So.2d 1274 (La.App. 1st Cir. 1984). Therefore, Dr. Tabari can not show and has not shown any prejudice from our maintenance of Dr. Ahmed's appeal.[4] Based on our policy favoring appeals and in the interest of judicial economy, we will maintain Dr. Ahmed's appeal as an appeal from the judgment of September 26, 1988. See State of Louisiana, Department of Transportation & Development v. Estate of Summers, 527 So.2d 1099 (La.App. 1st Cir.1988). For these reasons, Dr. Tabari's objection to Dr. Ahmed's appeal has no merit.
On appeal, Dr. Ahmed urges the following assignments of error:
1) The trial court erred in finding that it was necessary for plaintiff to establish an employer-employee relationship to recover under the Unfair Trade Practices Act.
2) The trial court erred in concluding that it was necessary to show that the patients of the dialysis center had been injured as a result of the actions of the defendants.
3) The trial court erred in concluding that plaintiff failed to prove a conspiracy or plan to subvert plaintiff's business was entered into between the defendants.
We find that all of Dr. Ahmed's assignments of error raise one issue: whether the trial court erred in finding that the defendants' conduct did not violate the Unfair Trade Practices Act. We will deal with the assignments of error together.
At the trial, the plaintiffs called three witnesses to testify. Dr. Ahmed, a nephrologist, testified that Dr. Tabari began working for him at the Washington Parish Dialysis Center in September, 1985. The working arrangement between Dr. Ahmed and Dr. Tabari was as follows: Dr. Tabari was the dialysis center's nephrologist; Dr. Tabari billed the patients' insurers directly for his services; Dr. Tabari was responsible for his own insurance, including malpractice and health insurance; Dr. Tabari was responsible for his own office and personnel outside of the dialysis center; Dr. Ahmed and the dialysis center would provide dialysis machines for the patients, and if the patients were hospitalized, Dr. Tabari was responsible for them. When Dr. Tabari began working at Dr. Ahmed's dialysis center in September, 1985, 17-18 patients were using the center.
On November 12, 1986, Dr. Ahmed testified that he called Dr. Tabari and asked if the dialysis patients were going to another dialysis center; Dr. Tabari responded that he knew "nothing about that." Dr. Ahmed asked Dr. Tabari to talk with the patients, to find out what was happening, and to persuade the patients to stay. According to Dr. Ahmed, Dr. Tabari agreed to do this.
Dr. Ahmed testified that two days later he went to his dialysis center and found a letter to him from Dr. Tabari dated November 13, 1986, which stated, "Because of all my Dialysis pt requested for transferring to new unit I will work in new unit from 11-14-86 and I will not be responsible for Washington Parish Dialysis Center." Dr. Ahmed's nursing staff was still at the dialysis center, but all his patients except one had gone to Crain's dialysis center. Dr. Ahmed continued to dialyze the remaining patient until he died, and then closed his center once the lease expired.
The plaintiffs called D.L. Crain to testify under cross-examination. Crain testified *488 that in 1985, some neighbors and friends on dialysis expressed an interest to him in having another dialysis center built. Crain, a licensed contractor, decided to build a dialysis center and he prepared the application for a certificate of need required by the Department of Health and Human Resources to open a dialysis center; no one associated with Dr. Ahmed's facility assisted Crain in preparing his application.
To obtain a certificate of need, the applicant must send in letters showing that people need a dialysis center; Crain supplied these letters, which were from patients using Dr. Ahmed's dialysis center; some of these patients expressed dissatisfaction with Dr. Ahmed's center in their letters. Crain testified that he obtained the names of these patients by word of mouth from other patients and that he did not obtain the patient names or any information about them from the nurses or staff of Dr. Ahmed's center or from Dr. Tabari. Crain also testified that he did not get any paperwork, sample forms, information about the dialysis machines, or a copy of a certificate of need application from Dr. Ahmed's staff or Dr. Tabari.
Crain testified that the dialysis nurses he hired had formerly been employed by Dr. Ahmed, but were not working for Dr. Ahmed when he hired them. Crain further stated that he did not approach these nurses, but that they contacted him after the patients that Crain had spoken with told them that Crain was planning to open a new dialysis center. According to Crain, two other employees working for Dr. Ahmed contacted him about jobs at his center.
In May, 1986, Crain testified that the dialysis patients asked him to try to get Dr. Tabari to act as the doctor at his facility; initially the patients had been upset when Dr. Tabari's predecessor left the center, but they had grown to like Dr. Tabari. Crain asked Dr. Tabari to sign his application for the certificate of need, which Dr. Tabari did. Crain said that prior to May, 1986, he had not even met Dr. Tabari.
Dr. Tabari also testified when called by the plaintiffs under cross-examination. He said that it was his understanding that he was not Dr. Ahmed's employee, but that he was using Dr. Ahmed's facility for his patients.
Dr. Tabari testified that he first met Crain when Crain approached him in May, 1986, and said he was planning to open a dialysis center; Crain asked Dr. Tabari if he would allow his patients to use Crain's center to which Dr. Tabari agreed. Dr. Tabari testified that he did not refer patients to Crain's dialysis center, but left the choice up to them. Dr. Tabari's next contact with Crain was also in May, 1986, when Crain asked him for his signature on his application for the certificate of need, which Dr. Tabari signed.
In November, 1986, Crain offered Dr. Tabari a position with his center. Dr. Tabari said that between May, 1986 and November, 1986, he had not discussed the new center with the patients or staff, nor did they discuss it with him. Dr. Tabari did state that Dr. Ahmed had called him in November asking about the patients going to a new center; he said he told Dr. Ahmed he knew nothing about it but denied telling him he would check with the patients regarding the situation.
Dr. Tabari testified that he did not intend to leave Dr. Ahmed's center; rather, he intended to work at both centers, wherever his patients were. He testified that when the staff told him that all the patients were going to Crain's center, he decided to resign. Dr. Tabari testified that he went to work at Crain's center because he was following his patients and because Crain offered a better financial arrangement. According to Dr. Tabari, he and Crain had no discussions regarding any financial arrangements until November 13, 1986.
The trial judge in his oral reasons for judgment determined that Dr. Tabari was not an employee of Dr. Ahmed. The judge stated that after reviewing the evidence, he could not find that a prima facie case was presented that "what was done [by the defendants] was a practice that offended the public morals."
LSA-R.S. 51:1405 declares "[u]nfair methods of competition and unfair or deceptive *489 acts or practices in the conduct of any trade or commerce ... unlawful." "[A] practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers and consumers include business competitors." Roustabouts, Inc. v. Hamer, ___ So.2d ___, 548 (La.App. 1st Cir.1984). The Second Circuit characterized conduct as unlawful when it involved "fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct." Core v. Martin, 543 So.2d 619, 621 (La.App. 2d Cir.1989). In several cases where an employer sues a former employee or one business associate sues a former business associate, the courts have discussed whether the former employee's or business associate's conduct constitutes an unfair trade practice. Core v. Martin, 543 So.2d at 619; Huey T. Littleton Claims Service, Inc. v. McGuffee, 497 So.2d 790 (La.App. 3d Cir.1986); Dufau v. Creole Engineering, Inc., 465 So.2d 752, 757 (La.App. 5th Cir.), writ denied, 468 So.2d 1207 (La.1985); National Oil Service of Louisiana, Inc. v. Brown, 381 So.2d 1269 (La.App. 4th Cir.1980). In National Oil Service, the Fourth Circuit discussed unfair trade practices in regard to the employer-employee relationship:
What constitutes unfair competition ... involves a balancing between the right of the employee to individual freedom on one hand and the right of the employer to honest and fair competition and to protection of business assets and property in the nature of trade secrets on the other hand.
A former employee who enters business in competition with his former employer necessarily utilizes the experience he acquired and the skills he developed while in his former employment. While the employer may by contract obtain limited protection against competition from former employees, by law he may be entitled to protection against wrongful appropriation and use by former employees of things specially developed by the employer in his business, such as lists of customers (particularly in route sales) whose regular patronage has been acquired by the employer's advertising, solicitation and organized effort. Considerations as to the type of protection to be afforded to the employer in a specific case include the manner in which and the purpose for which customer lists are compiled; the conduct and motivation of the employee before and after termination of the employment; the manner in which the customers are contacted after the termination and the nature of the representations made to the customer by the former employee; and the existence of a scheme to take over all or a substantial part of the former employer's business, or of an intent to injure the former employer's business.
National Oil Service, 381 So.2d at 1273. (Citation omitted).
Reviewing the testimony, we cannot say that the trial court erred in determining that the plaintiffs did not prove that a violation of the Unfair Trade Practices Act occurred. The trial judge apparently believed the testimony of Crain and Dr. Tabari, and as credibility determinations are the province of the trial court, we cannot say that his factual findings based on the two defendants' testimony are clearly wrong. According to the testimony, the patients asked Crain to build his center, he obtained names of other dialysis patients by word of mouth from patients and not from Dr. Tabari or the staff or records of Dr. Ahmed's center. The nurses and staff Crain hired contacted him about employment; none of the nurses Crain hired were employed by Dr. Ahmed when Crain gave them jobs. While Dr. Tabari did sign the defendants' application for a certificate of need, he testified that he would go wherever his patients went for their dialysis. The plaintiffs did not contradict the testimony of Dr. Tabari or Crain by calling a patient or nurse as a witness, nor did Dr. Ahmed's testimony establish any violations of the Unfair Trade Practices Act.
The plaintiffs did not prove (as did the successful plaintiffs in the previously cited cases dealing with employees and business associates) that the defendants took any of Dr. Ahmed's records or equipment to build *490 or operate Crain's center. The plaintiffs also did not prove that the defendants misrepresented anything to the patients as to Dr. Ahmed's dialysis center or that the defendants were involved in a scheme to take over Dr. Ahmed's center or that the defendants had an intent to injure Dr. Ahmed's business.
Dr. Ahmed contends that the trial court erred in requiring the plaintiffs to establish an employer-employee relationship in order to recover under the Unfair Trade Practices Act. While we agree with Dr. Ahmed that an employer-employee relationship is not a prerequisite to recovery under the Unfair Trade Practices Act, we find that regardless of whether Dr. Tabari was an employee of Dr. Ahmed's, the plaintiffs failed to establish any violation of the Unfair Trade Practices Act.
Dr. Ahmed also contends that the trial court erred in considering whether the defendants' conduct was injurious to the patients. This contention has no merit as we earlier stated that injury to consumers may be considered in determining whether a practice violates the Unfair Trade Practice Act. For these reasons, Dr. Ahmed's assignments of error have no merit and the judgment of the trial court is affirmed. Dr. Ahmed is to pay the costs of this appeal.
AFFIRMED.
NOTES
[1] We note that Washington Parish Dialysis Center, Inc., was added as a plaintiff by amended petition.
[2] We note that defendant, Rainbow Health Care, Inc., d/b/a Bogalusa Kidney Care Dialysis Center was initially named as Bogalusa Kidney Care Dialysis Center in the original petition; plaintiff later amended the petition to correctly name the defendant.
[3] While the defendants called their motion one for a directed verdict, it is more properly called a motion for involuntary dismissal. LSA-C.C.P. art. 1672B.
[4] We find this case distinguishable from a line of cases wherein appeals were dismissed because they were taken from second judgments which were identical to prior judgments. Pousson v. Klumpp, 456 So.2d 1037 (La.App. 3d Cir.1984); Cox v. Kirkpatrick, 393 So.2d 1284 (La.App. 1st Cir.1980), writ granted in part on other grounds, denied in part, 396 So.2d 926 (La.1981). In these cases, the prior judgments had become definitive and the delays for appeal had run, unlike the situation in the case at bar.