686 So.2d 160 (1996)
Steven M. GOODMAN, Plaintiff-Appellant,
v.
Paul D. SPILLERS, Theus, Grisham, Davis & Leigh, L.L.P., The United Group of Paper Distributors, Inc., and Bancroft Paper Company, Inc., Defendants-Appellees.
No. 28933-CA.
Court of Appeal of Louisiana, Second Circuit.
December 23, 1996.
*162 Barham & Arceneaux by Mack E. Barham, Robert E. Arceneaux, Gail N. Wise, Robert Markle, New Orleans, for Plaintiff-Appellant.
Theus, Grisham, Davis & Leigh by Edwin K. Theus, Jr., Monroe, Onebane, Bernard, Torian, Diaz, McNamara & Abell by Robert M. Mahony, Lafayette, for Defendants-Appellees.
Before MARVIN, C.J., and NORRIS and GASKINS, JJ.
MARVIN, Chief Judge.
This is a sequel to United Group v. Vinson, 27,739 (La.App. 2d Cir. 1/25/96), 666 So.2d 1338, writ denied 96-0714 (La. 9/27/96), 679 So.2d 1358, which was an action that arose out of the alleged breach of fiduciary duties owed by persons who were or had been directors or advisory directors of The United Group of National Paper Distributors, Inc. Goodman, who was one of the original defendants and a plaintiff in reconvention in United Group, appeals a judgment in this action for malicious prosecution and detrimental reliance that sustained the exceptions of res judicata (statutory issue and claim preclusion) filed by United Group and Bancroft Paper Company, Inc., to Goodman's demands. La.R.S. 13:4231, et seq.
Goodman's reconventional demands in the United Group action were dismissed with prejudice on a directed verdict judgment in 1994. Judgment was also rendered on the main demand against Goodman and the other defendants for $9.5 million in 1994, but the claims against Goodman on the main demand were dismissed with prejudice in 1995, after Goodman's motion for new trial was granted. The 1994 judgment for $9.5 million was reversed on the appeal of the other defendants. Goodman's initial reconventional demand in United Group was prematurely based on La. C.C.P. art. 863, but was later amended and based on allegations of the breach of Unfair Trade Practices and Consumer Protection Laws, La.R.S. 51:1401, et seq.
Goodman's instant action for damages against Bancroft, United and their attorneys [Spillers and his law firm] was brought about two months after his reconventional demand and the demands against him had been dismissed under the circumstances above stated. In the instant action, Goodman alleged malicious prosecution and detrimental reliance against Bancroft and United.
This appeal by Goodman questions the correctness of the trial court's rulings sustaining the res judicata exceptions of Bancroft and United against the claims of malicious prosecution and detrimental reliance that Goodman alleged in this action against those exceptors. La.R.S. 13:4231, et seq.
Resolution of the malicious prosecution claim rests on whether issues critical to that claim were resolved in the dismissal with prejudice of Goodman's reconventional demand, based on Unfair Trade Practices and Consumer Protection laws, against United and Bancroft by the directed verdict judgment in 1994. Resolution of Goodman's detrimental reliance claim rests on whether it should have been asserted as compulsory or mandatory under La.C.C.P. art. 1061, by Goodman in his reconventional demands in United Group.

*163 FACTUAL SUMMARY

Bancroft Paper Company, Inc. owned 91 percent of United Group, its subsidiary. United served other paper distributors. The collective buying power of United and its distributors benefited each of the entities. Several of the individuals owning or controlling distributors of varied size became directors of United. Goodman, who was a United Group director, is a principal stockholder and officer of a corporate distributor of paper products in New Hampshire which, through United, bought and sold paper products.
In December 1986, Paul Spillers, attorney for United and Bancroft, allegedly for those clients, advised the board of directors of United that they would no longer need to be insured as directors if they would become "advisory" directors. According to Spillers, advisory directors would be shielded from fiduciary responsibility, including responsibility for acts involving conflicting interests. The conflicts of interest might possibly arise from a director's concern for his or her distribution enterprise. The distinction in terminology was shortened by the litigants to the "fiduciary board" and the "advisory board."
Goodman, among those on United's board of directors, opted to become an advisory director, allegedly out of his reliance on that advice, remaining as an advisory director until 1990. According to Goodman, Spillers conceived this shift in United's power structure as a scheme to wrest control of United from its former directors, "appeasing" those directors by offering to make them advisory directors. Bancroft's "control" of United was allegedly enhanced while Goodman and others remained loyal as distributors in and for the United Group.
As described in United Group, supra, Susan Vinson, Goodman, and other United "directors" formed Consolidated Distributors, Inc., at the urging of Vinson, who perceived that she "jeopardized" her future at United in 1990 by informing advisory board members of a possible buy-out of United. Consolidated competed with United. Blaming Vinson and other defendants for United's loss of buying power, United and Bancroft brought the United Group action in 1991.
While no longer an advisory board member in 1990, Goodman thereafter attended meetings of the United Group advisory board and was treated similarly to an advisory director. United and Bancroft pursued their 1991 action against Goodman under the theory that he acted as a de facto "advisory director."

THE RECONVENTIONAL DEMAND IN UNITED GROUP
Goodman asserted in United Group that that action was filed to harm the Consolidated venturers, who were alleged by United to have misappropriated trade secrets, violated duties as advisory directors, and committed unfair trade practices.
On August 13, 1991, Goodman and the other defendants in United Group, supra, initially reconvened, alleging violation of La. C.C.P. art. 863, as follows:

8Directors
... Directors, reconvenors, allege that the suit against them is frivolous and without any cause, right, or merit whatsoever, all to the knowledge of Bancroft, and it is designed for the purpose of litigious harassment and intended to create a significant cost in attorney's fee [sic] on the part of the newly organized Consolidated Distributors, Inc., all for the purpose of seeking to interfere with the free and unbridled, competitive environment in which this company and these reconvenors have sought to operate, and all in violation of the provisions of Article Number 863 of the Louisiana Code of Civil Procedure, entitling these defendants to damages, for attorney's fees, penalties, and loss of business opportunity as may be reasonable in the premises.
On October 16, 1991, the reconventional demand was amended to delete the La.C.C.P. art. 863 basis of the claims quoted in the above paragraph and to add allegations based on unfair trade practices and violations of the consumer protection law:

*164 9Directors
The actions of Bancroft and the United Group of National Paper Distributors, Inc. are in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401, and have resulted in injury and damage to the directors and Consolidated Distributors, Inc. In accordance with the provisions of the said act, the directors and Consolidated Distributors, Inc. are entitled to such damages as are reasonable in the premises, together with attorney's fees and costs incurred in the prosecution of this action.
After a trial in the United Group litigation, a jury awarded $9.5 million in damages to United and Bancroft against the defendants therein, including Goodman.
The judgment in United Group was initially rendered and signed July 11, 1994, against all defendants before Goodman's motion for a new trial was granted in 1995. Goodman's reconventional demand was dismissed with prejudice on a directed verdict in the 1994 judgment, for these oral reasons given by the trial court:
Now, the motion for directed verdict on the unfair trade practices claim initially had some colorable appeal. But it seems to be based upon threats of the lawsuit [brought by United and Bancroft] and then the filing of the lawsuit against persons that I have found should remain in this lawsuit to the end as defendants. In a certain sense that by itself defeats that claim.... The court does not believe that the unfair trade practices law applies or that any rational juror could find a violation of the unfair trade practices law on the facts of this case and accordingly the motion for directed verdict as to that claim is also granted.... The claims of the directors for damages as against The United Group and Bancroft Paper except for the claim of Mr. Goodman which is ... reserved ..., [as to] those [other] claims the Court finds that no rational juror could find entitlement to relief under the reconventional demands....
* * * * * *
The Court [deferred a ruling as to Goodman's] reconventional demand ... yesterday. The motion for directed verdict filed by plaintiffs as against those demands ... is granted.... (Our brackets).
The demands of United and Bancroft against Goodman were dismissed with prejudice in a judgment on April 24, 1995. According to the brief of United and Bancroft in this action, these demands were dismissed for "practical and procedural" reasons relating to their enforcement of the $9.5 million judgment against the other defendants. Goodman, consequently, had no part in the devolutive appeal of the United Group judgment.
Goodman brought this action on June 30, 1995, about two months after his dismissal from the United Group action. Goodman alleges that the 1991 United Group action was maliciously prosecuted without probable cause. He also seeks to recover damages for having relied to his detriment on the representations of Spillers that Goodman would be "shielded" from personal liability by becoming an "advisory director" of United.

DISCUSSION
Doubts as to the factual veracity of Goodman's allegations are resolved in his favor for the purposes of the res judicata exceptions. State, Dept. of Social Services v. Coleman, 616 So.2d 844, 847 (La.App. 3d Cir.1993); Pacific Finance Company of Caddo v. Benson, 149 So.2d 239 (La.App. 2d Cir.1963), writ denied.
The doctrine of res judicata was substantially changed by La.Acts 1990, No. 521, § 5, effective January 1, 1991, and the act applies to all actions filed on or after that date. A second action is barred when it arises out of the same transaction or occurrence as the prior action. This promotes judicial economy and fairness because the litigants must seek all relief and assert all rights arising from the same transaction or occurrence in the first action. "[I]t would not matter whether the cause of action asserted in the second action was the same as that asserted in the first or different as long as it arose out of the transaction or occurrence that was the subject matter of the first action." Comment (a) 1990 to La.R.S. 13:4231. When the judgment *165 is in favor of the plaintiff, all causes of action asserted are extinguished and merged in the judgment. Causes of action that were not asserted by the plaintiff are also extinguished, and are barred by the judgment. Comment (f) 1990.
La.R.S. 13:4231 presently provides a broad application of res judicata, the purpose of which is to foster judicial efficiency and protect litigants from multiple and protracted litigation. Prudhomme v. Iberville Insulations, 93-778 (La.App. 3d Cir. 3/2/94), 633 So.2d 380. The statute was amended in 1990 to make a substantive change in the law: a judgment bars all causes of action arising out of the same transaction or occurrence. Steptoe v. Lallie Kemp Hospital, 93-1359 (La. 3/21/94), 634 So.2d 331, 335.
Along with La.R.S. 13:4231, La.C.C.P. art. 425 A was amended, effective January 1, 1991, to provide: "A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." According to the Comment 1990 to Art. 425, "[t]his amendment expands the scope of this Article to reflect the changes made in the defense of res judicata and puts the parties on notice that all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation must be raised." La.C.C.P. art. 1061 was also amended to require the defendant to assert by reconventional demand all causes of action he may have arising out of the transaction or occurrence that was the subject matter of the first action. Comment (b) 1990 to § 4231.
La.R.S. 13:4231 now provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment. (Emphasis supplied.)
Although the parties in the second suit may be nominally the same as in the first suit, their respective quality or capacity in the second suit may affect the application of res judicata. See Morris v. Haas, 659 So.2d 804, 810 (La.App. 5th Cir.1995), writ denied.
A judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial. La.C.C.P. art. 1673. A final judgment is conclusive between the parties except on direct review under La.R.S. 13:4231. A final judgment acquires the authority of the thing adjudged if no further review is sought within the time fixed by law or if the judgment is confirmed on review. La.C.C. art. 3506(31); Tolis v. Board of Supervisors of Louisiana State University, 95-1529 (La. 10/16/95), 660 So.2d 1206.
La.R.S. 13:4232 contains some exceptions to applying the res judicata statute:
A judgment does not bar another action by the plaintiff:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or
(3) When the judgment reserved the right of the plaintiff to bring another action.

MALICIOUS PROSECUTION; CLAIM PRECLUSION
Although the cause of action or claim preclusion of malicious prosecution is not squarely urged by United and Bancroft in support of the trial court's judgment, we discuss it briefly for purposes of contrasting *166 the assertion of issue preclusion mentioned infra. Compare La.R.S. 13:4231(2) and (3), quoted above.
Notwithstanding the statutes (§ 4231, La.C.C.P. arts. 425, 1061) requiring all causes of action arising out of the "transaction that is the subject matter of the litigation" to be asserted, a petition alleging malicious prosecution is "deficient" if it is instituted before the bona fide termination of the prior litigation in favor of the party who alleges malicious prosecution. That termination is a necessary element of the cause of action for malicious prosecution. Montalvo v. Sondes, 93-2813 (La. 5/23/94), 637 So.2d 127, 131. Goodman's cause of action for malicious prosecution is not barred by the United Group judgment that dismissed his reconventional demands in that action with prejudice.

ISSUE PRECLUSION
Even where claim preclusion of § 4231(2) does not apply, issue preclusion under § 4231(3) may bar a subsequent suit. See generally 3 James W. Moore et al, Moore's Manual, Federal Practice and Procedure, §§ 30.04, 30.05 (1996). La.R.S. 13:4231(3) declares, "A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment. "Emphasis and italics supplied. A directed verdict may be considered "actual litigation" for issue preclusion purposes. Restatement (Second) of Judgments, § 27, cmt. (d) (1980).
Goodman's reconventional demand in the United Group action was founded on unfair trade practices and the consumer protection law. An unfair trade practice is deemed unlawful or unfair if the activity involves fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct. Core v. Martin, 543 So.2d 619 (La. App. 2d Cir.1989). What is an unfair trade practice is determined on a case-by-case basis.
A malicious prosecution claim requires the plaintiff to prove six elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding, (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding, (3) its bona fide termination in favor of the present plaintiff, (4) the absence of probable cause for such proceeding, (5) the presence of malice therein, and (6) damage conforming to legal standards resulting to plaintiff. Terro v. Chamblee, 95-70 (La.App. 3d Cir. 7/19/95), 663 So.2d 75.
The issues in Goodman's malicious prosecution action which United and Bancroft contend were actually litigated and determined in their favor in the prior action are the lack of malice and the presence of probable cause.
Bancroft and United's theory for issue preclusion is that Goodman's reconventional demand that was dismissed with prejudice included issues that are critical to the determination of the present malicious prosecution claim. The argument in support of this theory essentially posits that the directed verdict judgment against Goodman dismissing his reconventional demand shows that Goodman lost on the issues necessary to such a claim. Bancroft and United's argument continues in that they identify similar issues which are requisite both to a favorable determination of malicious prosecution and to a claim that the bringing of a lawsuit was an unfair trade practice.
For instance, United and Bancroft emphasize that the allegedly "frivolous" nature of United and Bancroft's suit against Goodman is the central theme in the reconventional demand and in Goodman's main demand in this action.
We are unable to determine exactly what specific issue or issues in the reconventional demand were actually litigated and determined as essential to the judgment dismissing Goodman's reconventional demand in United Group. Since what constitutes an unfair trade practice is determined case by case, all the directed verdict stands for is the proposition that it was not an "unfair trade practice" for Bancroft and United to bring suit against Goodman. The trial court did not determine whether the conduct of the *167 United Group plaintiffs constituted fraud, deception, misrepresentation, breach of fiduciary duty, or unethical conduct.
We cannot determine if the underlying litigation was resolved on the basis that United and Bancroft's original claim against Goodman was not deceptive or that it was not fraudulent. The trial court may have determined that United and Bancroft's suit was instituted with probable cause, or without malice. If the United Group action against Goodman was not "malicious," the suit would not have been an unfair trade practice claim. See generally, United Group, supra. If the suit were malicious but innocuous, on the other hand, there would have been no unfair trade practice claim, for the intent to harm business competition, or "mens rea," standing alone, is not within the meaning of La.R.S. 51:1401, et seq. See La.R.S. 51:1409, requiring ascertainable loss. The record does not reveal precisely how the court in United Group reached its directed verdict out of the numerous possible reasons that may be imagined for that court's determination.
All Bancroft and United have proved is that the directed verdict judgment resolved and disposed of Goodman's entire claim based on unfair trade practice and consumer protection laws, not the actual determination of a single issue. The disposition of an entire claim, in itself, has no effect on the res judicata bar of an issue in a later case between the same parties unless disposition of the specific issues was essential to the disposition of that claim. La.R.S. 13:4231(3).
The threshold problem of barring Goodman's malicious prosecution cause of action on the grounds of issue preclusion is the lack of proof as to what issue or issues were actually litigated and determined in United Group. United and Bancroft simply have not shown with specificity which issues involving the alleged unfair trade practices were actually litigated and determined in the underlying litigation. La.R.S. 13:4231(3).
"Actually litigated and determined" incorporates the concept of certainty found necessary in Russell v. Place, 94 U.S. 606, 24 L.Ed. 214 (1877) and its progeny. Issue preclusion does not bar re-litigation of what might have been litigated and determined, but only those matters in controversy upon which the prior judgment or verdict was actually based. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).
It is generally not sufficient for purposes of issue preclusion to simply prove that a party to prior litigation argued numerous issues and lost his case. Issue preclusion requires the issue to be precluded to have been a dispositive issue which the prior court must have considered in a contest between the same parties. See generally and compare Ebey v. Harvill, 26,373 (La.App. 2d Cir. 12/7/94), 647 So.2d 461; S.E.L. Maduro v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1483 (11th Cir.1987). Here, we are similarly unable to determine what issue or issues the court in United Group must have considered in disposing of Goodman's reconventional demand. The doctrine of res judicata cannot be invoked unless all essential elements are present and established beyond all question. Kelty v. Brumfield, 93-1142 (La. 2/25/94), 633 So.2d 1210.

DETRIMENTAL RELIANCE CLAIM; COMPULSORY RECONVENTIONAL DEMAND
Resolution of whether Goodman's detrimental reliance claim is barred by the prior judgment affecting this case's litigants requires interpretation of what is a "compulsory" reconventional demand under La. C.C.P. art. 1061.
Res judicata now focuses on the transaction or occurrence giving rise to the prior lawsuit. The limitation of the prior res judicata statute to bar a particular demand under a particular "theory" has been statutorily removed. See La.R.S. 13:4231, comment (a).
If the detrimental reliance claim arises out of the same transaction or occurrence which formed the subject matter of the prior litigation between the same parties, the judgment in the underlying litigation will bar this claim. Compare La.C.C.P. art. 1061 B and comment (b) thereto with La.R.S. 13:4231(2) and comments thereunder.
*168 Generally, a demand or defense which was brought, or should have been brought, in a prior litigation between identical parties may not be asserted in a later action based on the same transaction or occurrence (factual circumstances). Compare La.R.S. 13:4231 and Restatement (Second) of Judgments § 22(2)(a), cmt. (e), illus. 7 (1980). Evidence used as a defense in a prior litigation forms part of the subject matter of that litigation. See authorities cited above. The statutory res judicata exception is stricti juris, however, and will not be granted unless all doubt against its application is resolved beyond question. Kelty, supra.
The United Group main or principal action was based on the alleged violation of the advisory directors' duties, trade secret misappropriation and unfair trade practices by the defendants in Consolidated's membership, those persons who competed with United having been once a part of United's membership or employees.
The transaction or occurrence which gave rise to Goodman's reconventional demand, alleging unfair trade practices and violation of the consumer protection law, was the institution of that United Group action against Goodman.
The transaction giving rise to the claim of detrimental reliance damages in this action is Goodman's relying to his detriment or injury on Spillers' advice or promises. Goodman's alleged damages include his being distressed over the $9.5 million personal judgment against him. That judgment and resulting damage, according to Goodman, was contrary to the alleged promises given him by Spillers, United and Bancroft. Allegedly, United and Bancroft, through Spillers, offered Goodman protection from, inter alia, personal liability to United for conflicts of interest if he would give up his position as a fiduciary director and become an advisory director of United Group. After such "promises," Goodman was sued by United and Bancroft for his actions that allegedly produced the conflicts of interest because of Goodman's serving as an advisory director and as an allegedly de facto advisory director of United.
Spillers' "advice" which gave rise to Goodman's alleged detrimental reliance in this case was "discussed" as Goodman's defense in United Group. Goodman testified to having no liability to United because of Spillers' "advice." The "facts" Goodman asserted as a defense were thus used by Goodman in the prior litigation. These "facts" now form part of the basis for Goodman's claim of detrimental reliance, alleging injuries which arose from the judgment. Goodman attempts to distinguish injury arising from the judgment, on the one hand, from injury arising from the institution of the action in which the judgment was rendered, on the other. It has been said that a cause of action springs from the injury for which one brings suit: that is, "a cause of action is based on an act which gives the right to invoke judicial interference." Steptoe v. Lallie Kemp Hospital, 634 So.2d 331, 335. This general or abstract statement, however, must be construed in conjunction with, and not in isolation from, the res judicata statute at issue in this appeal.
Although it was not shown that Goodman testified in United Group about the injury he sustained before the rendition of the 1994 monetary judgment as a result of believing Spillers' claim of no liability, such testimony about such injury for which relief was sought in Goodman's reconventional demand is not necessary for res judicata to apply. See La.R.S. 13:4231, comment (a), focusing on "transaction or occurrence," not cause of action. If in a prior litigation one emphasizes the events giving rise to a right to relief, the omission of seeking such relief does not preclude the conclusion that the "same transaction or occurrence" gave rise to that prior litigation. For example, if one has litigated part of his injury arising from a single event in one suit against a party who is also named in the second suit, he will have "split" his cause of action, merging his claim for the unmentioned harm in the judgment granting partial relief. La.R.S. 13:4231, comment (a); compare Shaw v. Scott, 585 So.2d 623 (La.App. 2d Cir.1991). Such a "split," though, occurs only where all the injuries could, or should, have been addressed and asserted. Consequently, because Goodman asserted his reliance on Spillers' advice as a defense to the main demand in United *169 Group, and additionally asserted his injuries from United and Bancroft's instituting the United Group action as the basis for his reconventional demand in the United Group action, Goodman's instant claim for damages arising out of those factual circumstances, facially is statutorily barred by § 4231(2) and C.C.P. art. 1061.
Goodman's attempt to distinguish his injury arising out of the filing of the action from the distress injury arising out of the $9.5 million judgment does not persuade us to a contrary conclusion.
We conclude Goodman's alleged damages arising from the $9.5 million judgment comprise part of the same transactions or occurrences which gave rise to the respective subject matters of the main and the reconventional demands in United Group. § 4231(2); La.C.C.P. art. 1061. In our opinion, the judgment is not distinct from the action in which it is rendered, but is the mere culmination of the action when it becomes final and definitive. See generally, the discussion of this indistinction in Harris v. Bardwell, 373 So.2d 777, 780-782 (La.App. 2d Cir.1979). See also Restatement (Second) of Judgments § 24(2) (1980):
What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit ... (Emphasis ours)
The "convenience" factor becomes relevant to our analysis of statutory claim or issue preclusion and compulsory reconventional demand where, as in this instance, injuries allegedly occur over a period of time. When considering the res judicata bar, the court may determine what comprises "one" or a "separate" transaction as contrasted from a group of events that may be deemed a "series" of transactions. See La.R.S. 13:3241, comment (a), requiring the court "to determine" what is the same transaction or occurrence which formed the subject matter of the prior litigation. Emphasis ours.
Even construing the statute in the strictest sense, we must conclude that Goodman's detrimental reliance damages incurred after being cast in judgment were "the subject matter of the [United Group] litigation" (La. R.S. 13:4231, and comment (e)), and that those damages arose out of the "same transaction or occurrence." La.R.S. 13:4231, comment (a).
Goodman should have reconvened for detrimental reliance damages in United Group, a cause of action distinct from malicious prosecution, because such reliance damages arise from the asserted advice or promise that Goodman would not be sued in an action that exposed him to a monetary judgment. Such a reconventional demand would have formed part of a "convenient trial unit" in that action, as did Goodman's demand for damages arising out of the alleged violation of the unfair trade practices and consumer protection laws which he did allege in reconvention in United Group.

CONCLUSION
Goodman's malicious prosecution claim is not precluded under La.R.S. 13:4231(2) because the cause of action did not exist until the prior litigation was terminated in his favor, even though we might assume, arguendo, that the transaction or occurrence upon which malicious prosecution is based arises out of the subject matter of the United Group action.
Goodman's malicious prosecution claim remains viable under § 4231(3) because the issues critical to his claim were not precisely determined in the reconventional demand based on unfair trade practices and violation of the consumer protection law.
Goodman's detrimental reliance claim was a compulsory reconventional demand which should have been asserted by Goodman in United Group. § 4231(2); La.C.C.P. art. 1061.

DECREE
The judgment of the trial court barring the malicious prosecution claim is reversed and *170 judgment is rendered overruling the res judicata exceptions directed to that claim. The judgment sustaining the exception of res judicata as to the detrimental reliance claim is affirmed. Costs are assessed one-half to Goodman and one-half to appellees.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
GASKINS, J., concurs.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, STEWART, GASKINS and PEATROSS, JJ.
Rehearing denied.