(74 South. 916)

No. 21816.

SONIAT v. WHITMER et al.

(Oct. 16, 1916. On Rehearing, April 16, 1917.)

*(Syllabus by Editorial Staff.)*

1. LIS PENDENS ⊜⇒26(1)—THIRD POSSESSOR—REMEDY—KNOWLEDGE.

A third possessor can be proceeded against only by the hypothecary action, and not by direct seizure; but this is not so where the third possessor acquired the property pending the litigation in which the judgment sought to be enforced was rendered and after notice of its pendency had been conveyed to him by due registry as prescribed by law.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. §§ 58, 62.]

2. VENDOR AND PURCHASER ⊜⇒233—SALES—BONA FIDE PURCHASER — UNRECORDED CLAIM—NOTICE.

The purchaser of real estate cannot be affected by unrecorded claims against the property, even though at the time of the purchase he had actual knowledge of them.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 563–566.]

3. TAXATION ⊜⇒531(1)—PAYMENTS OF TAXES—RIGHT OF THIRD POSSESSOR.

Legal subrogation does not take place in favor of the third possessor who pays taxes assessed to him.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 986.]

4. JUDGMENT ⊜⇒731—MATTERS DETERMINED.

The silence of the judgment on any demand which was an issue in the case under the pleadings must be considered as an absolute rejection of the demand.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1259, 1261.]

5. EXECUTION ⊜⇒176—INJUNCTION—DAMAGES—ATTORNEY'S FEES.

Where error made it necessary for plaintiff to employ counsel to protect his property from a seizure under a judgment to which he was a stranger, the burden of the expense, including the attorney's fees, should fall upon the parties responsible for the error, and not upon plaintiff, who was entirely without fault in the matter.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 459½, 538.]

6. EXECUTION ⊜⇒176 — INJUNCTION—ATTORNEY'S FEES—AMOUNT.

Where plaintiff through defendant's error was required to employ counsel to protect his property from seizure under a judgment to which he was a stranger, and the property was valued at $175,000, an allowance of $1,500 attorney's fees to plaintiff was not excessive.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 459½, 538.]

On Rehearing.

*(Syllabus by the Court.)*

7. EXECUTION ⊜⇒176—WRONGFUL SEIZURE—LIABILITY IN DAMAGES.

Where property belonging to a third person is illegally seized as the property of the judgment debtor, and the owner goes into court, enjoins the seizure, and has it set aside, the plaintiff in injunction is entitled to counsel fees as damages.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 459½, 538.]

O'Niell, J., dissenting.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry.; B. H. Pavy, Judge.

Suit by Leonce M. Soniat against Robert F. Whitmer and others to enjoin a seizure of property to satisfy a demand against plaintiff's vendor. Judgment for plaintiff including attorney's fees, and defendants appeal. Judgment amended by increasing the amount allowed as damages, and as amended affirmed.

Gilbert L. Dupre, of Opelousas, and Dart, Kernan & Dart, of New Orleans, for appellants. J. Howell Pugh, of Plaquemine, and Dubuisson & Robertson, of Opelousas, for appellee.

PROVOSTY, J. On January 15, 1910, a large body of timber land in the parish of St. Landry was adjudicated at sheriff's sale to J. E. Dunlap, and he made tender of payment in compliance with his bid. The sheriff thought the amount tendered was not sufficient, and so he recried the property, and adjudicated it to Robert F. Whitmer and C. W. Lamar, and in due course made and recorded a deed in their favor.

On June 30, 1913, in a suit brought by Dunlap, this court annulled the said adjudication and deed to Whitmer and Lamar, and ordered the tender of payment made by Dunlap to be accepted, and a deed to be made in his favor. Dunlap v. Whitmer, 133 La. 317, 62 South. 938, Ann. Cas. 1915C, 990.

Dunlap deposited in court the amount of the tender, and cited all parties appearing of record as having mortgages or privileges upon the property to appear and litigate their claims upon the said fund contradictorily with each other, and to show cause why the property should not pass to him free of said incumbrances.

Among these parties so cited were Whitmer and Lamar, who held mortgages upon the property. They in their answer to this citation alleged that they had paid the taxes of the years 1910, 1911, and 1912 upon the property, while it stood of record in their name pending the suit of Dunlap against them to have the adjudication and deed made by the sheriff to them annulled, and that these payments had been thus made for the preservation of the property, and should be reimbursed to them, not out of the funds deposited, but out of the pocket of Dunlap, the owner of the property, to whose benefit the payments had inured, and they prayed for personal judgment against him, and they prayed further to be recognized as having, for the security of said reimbursement, the privilege which the state and parish had for the payment of these taxes, and that the said property be decreed to have passed to Dunlap subject to said privilege.

The case was appealed to this court, and a personal judgment was rendered by this court against Dunlap as thus prayed; but no notice was taken by this court either in its opinion or in its decree of that part of the said prayer asking for said privilege. The court, however, decreed that the reimbursement of said taxes was secured by the privilege accorded by article 3226 of the Civil Code to him who has incurred expenses for the preservation of the property of another. Dunlap v. Whitmer, 137 La. 792, 69 South. 189.

The date of this judgment was June 29, 1915; and the date of its recordation in the mortgage book of the recorder's office of the parish of St. Landry was July 6, 1915.

Meantime, by an act passed and duly recorded on April 9, 1915, Dunlap had sold the property to Leonce M. Soniat, the plaintiff in the present suit.

On July 19, 1915, Whitmer and Lamar caused a writ of fi. fa. to issue against Dunlap upon said judgment, and caused said property to be seized and advertised for sale to satisfy said judgment.

Soniat then brought the present suit, enjoining the said seizure, on the ground that his property cannot be seized to satisfy a debt of Dunlap, and that, if Whitmer and Lamar have a privilege upon said property which entitles them to proceed against it, they must do so by the hypothecary action, and not by a direct seizure.

[1] A third possessor can, of course, be proceeded against only by the hypothecary action, not by direct seizure; but this is not true where the third possessor acquired the property pending the litigation in which the judgment sought to be enforced was rendered, and after notice of the pendency of the litigation had been conveyed to him by due registry as prescribed by law.

Whitmer and Lamar contend that Soniat stood in close friendly and business relations with Dunlap, lending him large sums of money upon this very property, and must have had full knowledge of the pendency of said suit, and therefore must be held to have taken the property subject to said privilege.

[2] Whether actual knowledge of the pendency of a suit can in any case be made to take the place of notice conveyed by the registry of a notice of lis pendens as prescribed by Act 22, p. 25, of 1904 is a question which need not be considered in the present case, for two very peremptory reasons:

First, that Soniat testifies that at the time of his acquisition he had no knowledge of the pendency of any suit in which a privilege was being demanded on said property, and there is no reason for not believing him; and,

Second, that by the decision in McDuffie v. Walker, 125 La. 152, 51 South. 100, and many subsequent decisions, the once vexatious question of whether the purchaser of real estate can be affected by unrecorded claims against the property, even though at the time of the purchase he had actual knowledge of them, has been settled in the negative—let us hope forever. Soniat took the property, therefore, free of said privilege.

[3] Whitmer and Lamar invoke also the privilege which the state and parish had for the payment of these taxes. This privilege was duly recorded as an effect of the filing of the assessment rolls in the recorder's office, and the inscription has never been canceled. The contention is that by operation of law, or in other words, by legal subrogation, Whitmer and Lamar succeeded to this privilege when they paid the taxes, and that by virtue of this privilege they have the same right which the state and parish had to proceed directly against the property regardless of any transfers that had been made of it.

The answers to this contention are obvious. First. Article 2161, C. C., provides in what cases legal subrogation takes place, and the payment of these taxes is not one of them. The point that legal subrogation does not take place in favor of the third possessor who pays taxes assessed to him was expressly decided in Succession of Erwin, 16 La. Ann. 132.

[4] Second. Whitmer and Lamar prayed for the recognition of this privilege in the suit itself in which the judgment now sought to be executed was rendered; and the trial court expressly rejected the demand. This court amended the judgment in certain particulars, and otherwise affirmed it; and the denial of this privilege was not one of the respects in which the judgment was amended. Besides, the mere passing over this demand in silence was a rejection of it.

"The silence of the judgment on any demand which was an issue in the case under the pleadings must be considered as an absolute rejection of the demand." Villars v. Faivre, 36 La. Ann. 398.

[5] The trial court allowed Soniat $1,500 damages for attorney's fees for procuring the setting aside of the seizure.

Whitmer and Lamar deny that this is such a case as calls for the allowance of any damages for attorney's fees, in view of the fact that, if error there was in the seizure of said property, it was an error of counsel, and an honest error induced by the judgment of this court, which recognized the privilege upon the property.

Honest or not, the error made it necessary for Soniat to employ counsel for protecting his property from a seizure under a judgment to which he was a total stranger, and the burden of this expense must fall either upon Whitmer and Lamar, who by their fault caused it, or upon Soniat who is entirely blameless in the matter. We think it should fall upon Whitmer and Lamar. In Iberia Cypress Co. v. Thorgeson, 116 La. 218, 40 South. 682, this court, after citing Ludeling v. Garrett, 50 La. Ann. 118, 23 South. 94,

White v. Givens, 29 La. Ann. 573, and Commission Co. v. Yale, 47 La. Ann. 696, 17 South. 244, said:

"In all three of the cases cited there was an unlawful seizure of property under a writ of fieri facias. Such cases are exceptions to the general rule that a plaintiff in injunction is not entitled to recover attorney's fees as an element of damages."

[6] Soniat complains that the $1,500 allowed is not enough, and Whitmer and Lamar that it is too much. We will allow $500 for the counsel fees in this court.

The property is valued at $175,000.

It is ordered, adjudged, and decreed that the judgment appealed from be amended by increasing to $2,000 the amount allowed for damages, and that as thus amended it be affirmed; Whitmer and Lamar to pay the costs in both courts.

## On Rehearing.

SOMMERVILLE, J. A rehearing was granted on the petition of defendants as to the attorney's fees, which were allowed in the opinion of the court as damages.

[7] In determining whether counsel fees should be allowed or not, and, if allowed, the amount, the court found that it was necessary for plaintiff to employ counsel to protect his property from seizure by judicial process in a suit by defendants in which he (plaintiff) was a stranger. His real estate had been seized to pay the debt of a third person, the judgment debtor of defendants. Such seizure by defendants was a quasi offense, for which they are responsible in damages to the owner of the property seized. C. C. 2315.

In the case of Deliole v. Morgan, 2 Mart. (N. S.) 24, it was held a trespass on the part of the sheriff to have seized and sold the property of plaintiff on an execution against another.

And in Edwards v. Turner, 6 Rob. 382, it is held:

"If the property of A. be attached under proceedings authorizing the seizure of that of B., it is a case of trespass."

In such cases actual damages are sustained, and the owner of the seized property is entitled to damages. And, where a writ of injunction is rendered necessary to protect the property from seizure, the costs of such proceedings and the fee of counsel for plaintiff in the writ are parts of the actual damages sustained by plaintiff in the writ.

In the case of Townsend v. Fontenot, Sheriff, 42 La. Ann. 890, 8 South. 616, where plaintiff, the owner of the property, injoined the sale of the property seized, and asked for attorney's fees as damages, the court say:

"The demand for attorney fees cannot be allowed. Such fees are allowed as damages when the injunction is dissolved; never when it is maintained; particularly in the absence of malice and probable cause. Dyke v. Dyer, 14 La. Ann. 701; [Neveu v. Voorhies] 14 La. Ann. 738; [Smith v. Bradford] 17 La. 263; [Hill v. Noe] 4 La. Ann. 304; [Flynn v. Rhodes] 12 La. Ann. 239; [Bank v. Toledano] 20 La. Ann. 571; [Chappuis v. Preston] 28 La. Ann. 729."

In the earlier case of White v. Givens, 29 La. Ann. 571, where the judgment debtor caused a writ of injunction to issue to preserve his homestead, the court allowed attorney's fees in sustaining the injunction. The court say:

"The plaintiff seeks in this suit, not only to prevent the sale of his homestead, but damages for the wrongful seizure. He treats the seizure as unlawful, a trespass, a violation of the right of exemption secured to him by law. He alleges as elements of damage the fees paid his attorney, the loss of his crop, the annoyance to his family, and his loss of time occasioned by the seizure. It is proper in estimating the damages occasioned by an unlawful invasion of the rights of a plaintiff to prove the loss, including the expense which he has incurred in preventing further wrong; and the reasonable fees of an attorney may be allowed as well as any other expense occasioned to the plaintiff by the unlawful act of the defendant."

The above decision is in line with Cooper v. Cappel, 29 La. Ann. 213, where the wife of the judgment debtor sued for damages because of the seizure of her property for the

debt of her husband. Attorney's fees were allowed in that case.

In the case of Shorten v. Booth, 32 La. Ann. 397, where plaintiff enjoined the sale of property which he had acquired at the bankrupt sale of his own property, and where defendant had caused that property to be seized under a writ of fieri facias in execution of an alleged judicial mortgage, attorney's fees were allowed in maintaining the writ of injunction.

There has been diversity of opinion as to whether attorney's fees would be allowed as damages on the maintenance of an injunction to prevent the seizure and sale of one's property in a judicial proceeding against a third person. Such damages have been allowed in Willis v. Scott, 33 La. Ann. 1026, and Ludeling v. Sheriff et al., 50 La. Ann., 118, 23 South. 94.

The general rule is that a litigant must pay his attorney. Attorney's fees are not parts of taxed costs in a suit. And such fees have not been construed as damages, except in those cases where a litigant has abused legal process and the other is compelled to go into court to have the illegal process set aside. In cases where a tort, or quasi offense has been committed, and the property of a third person has been seized for the debt of another, and the owner of the property invokes the process of the court to maintain his possession and ownership, the latter should be allowed reasonable attorney's fees, as damages.

In the case of Iberia Cypress Co. v. Thorgeson, 116 La. 218, 40 South. 682, attorney's fees were denied as damages to the plaintiff in injunction, who was the owner of the property which was being trespassed upon; but cases allowing such damages where property had been unlawfully seized under writs of fieri facias were approved.

Attorney's fees have been allowed as damages in suits for damages in the following cases: Chapuis v. Waterman, 34 La. Ann. 58; Gilkerson-Sloss Co. v. Yale & Bowling, 47 La. Ann. 690, 17 South. 244; Gilkerson-Sloss Co. v. Baldwin, 47 La. Ann. 696, 17 South. 246; Am. Hoist & Derrick Co. v. Frey, 127 La. 183, 53 South. 486.

It is clear that, where one has abused legal process and causes the property of a third person to be seized for the debts of another, and the third person is compelled to go into court to maintain his title to the property seized and to have the illegal process set aside, a tort or quasi offense has been committed by the seizing creditor against the third person, for which he is responsible in damages, including attorney's fees.

That is the basis for the allowance of attorney's fees as an element of damages for the dissolution of the conservatory writs. The use of these writs affords an extraordinary, but harsh, remedy, and the law looks upon their misuse or abuse as a trespass for which the offender must render account. Attorney's fees are allowed only for services rendered in having the writs dissolved and the property seized thereunder released. The allowance of attorney's fees for the dissolution of the conservatory writs has passed beyond the pale of controversy.

The same reason exists for the allowance of attorney's fees in favor of a third person who is obliged to resort to the writ of injunction to have title to property maintained and his property released from seizure as that of another as exists in favor of the defendant in one of the conservatory writs. In either case it is the abuse of the harsh, but extraordinary, powers of the court that entails the penalty. The plaintiff in one of the conservatory writs has his choice of taking the ordinary course and obtaining judgment before putting the mandate of the court into motion. If he chooses to put the mandate of the court into motion before judgment, he does so at his peril. So does the

judgment creditor who wishes to test the title to property claimed by a third person by seizing it and defending an injunction suit instead of proceeding by an ordinary suit. In the one case, as in the other, the harsh remedy of seizing in advance of the judgment justifying the seizure entails the penalty of having to pay the other man's lawyer when the seizure turns out to have been wrongfully made.

Where property belonging to and in the possession of a third person is illegally seised as the property of the judgment debtor, and the owner goes into court, enjoins the seizure, and has it set aside, and maintains his title, the plaintiff in injunction is entitled to counsel's fees as damages.

The injunction in this case was sued out by plaintiff to rescue a piece of property from seizure and sale, valued at $175,000, for the debts of a third person; and the fee of $1,500 allowed by the district court is based on the value of the thing seized. It is reasonable and will not be disturbed.

The record discloses not only the value of the property of plaintiff which was seized, but also the attack made by defendants against the title of plaintiff, and the valuable services rendered by counsel for plaintiff. These are elements which will be considered in fixing fees of counsel in such cases.

There may be cases with extenuating circumstances which would relieve a seizing creditor from actual damages when the property of a third person is illegally seized. But this case is not such.

It is true that defendant Whitmer had illegal possession of the property at one time, and that he paid taxes thereon to preserve the property, for which amount of taxes he had a privilege. But he was dispossessed, and he retained only a privilege for the amount of the taxes; and, as this privilege was not registered at the time that plaintiff acquired the property, he bought without notice of its existence.

A mortgage certificate may have shown certain taxes to have been due at the time of the purchase, but the record showed at that time that these taxes had been paid. They were not therefore unpaid, and there was nothing suspicious in the waiving of the mortgage certificate by plaintiff.

Defendants say:

That "the plaintiff in execution was not a willful trespasser, but evidently acted in good faith," and that this is not such a case as calls for damages.

They say further:

"Respondent avers that the plaintiff herein is not a purchaser in good faith."

And again:

"We are not concerned with his [Soniat's] outside understandings, if any he had. What should govern the infliction of damages is the fact that at the time of the levy, and at the time of the institution of the injunction suit, the circumstances surrounding Soniat's title were such as to justify any honest man in believing that the transaction was not bona fide, and was, on the contrary, a flank movement to defeat the operation of a judgment which in specific words granted to Whitmer the right to retain the property, and which recognized by its language that he was in possession of the property, with a privileged right of detention superior to all others."

The record fails to disclose that the purchase by plaintiff was not bona fide, or that it was a flank movement to defeat defendants in any of their rights. The judgment referred to found that defendants had been in unlawful possession of the property, and it deprived them of that possession. It recognized that they had a privilege on the property for the amount paid by them to preserve it while it was in their possession; but it did not give them any right to detain the property until the privilege was paid by Dunlap.

The seizure by defendants of plaintiff's property under a judgment against Dunlap was a trespass. The circumstances surrounding Soniat's title do not present such an exceptional case as to take the illegal seizure of it from under the rule that:

"Every act whatever of man that causes damages to another obliges him by whose fault it happens to repair it." C. C. 2315.

It is therefore ordered, adjudged, and decreed that the judgment of the district court fixing the attorney's fee at $1,500 is affirmed, at the cost of the appellant.

See dissenting opinion of O'NIELL, J., 74 South. 920.