On Rehearing.
 

 FOURNET, Justice.
 

 The plaintiffs, Nona E. Martin and Emma Lee Short, claiming that certain property acquired by them from Jack Allen, hereafter described, was being slandered by the defendants, Joseph R. Fuller, Mrs. Mary Andrews Milner and Louis Milner, Jr. (the latter two being the surviving widow and sole heir of Louis Milner), instituted proceedings against them for the purpose of having this cloud on their title removed. The defendants, admitting in their answer that the plaintiffs own the property described in their deed from Allen, asserted their ownership of a 13-foot strip traversing the same that had been formerly dedicated as an alleyway. As to this portion of the property, they converted the suit into a petitory action. The lower court, in its judgment, in addition to recognizing the plaintiffs to be the owners of the property admittedly owned by them, decreed the defendants to be the owners of this alleyway. The plaintiffs are appealing.
 

 The record shows that the plaintiffs, on November 24. 1941, entered into a contract with Jack Allen wherein they leased for one year, beginning on January 1, 1942, the monument business that had been conducted by Allen on Lots 4 and 9 and the West 10 feet of Lot 8 in Square 76 of the D. A. Breard, Sr. Addition to the City of Monore, such property being described in the lease to be “as per plat of record in the Clerk’s Office, Ouachita Parish, Louisiana.” The lease was duly recorded the following day. Therein the plaintiffs agreed to pay Allen a monthly rental of $75 and were granted the option, at the end of any lease month during its life, of purchasing the business and the property outright for the sum of $8,000. Contemporaneously, a deed to the fealty, “together with the improvements and appurtenances thereunto belonging,” was executed by Allen in favor of the lessees and was placed in escrow with the trust officer of the Central Savings Bank & Trust Company of Monroe, to be delivered to the lessees upon their compliance with the provisions of the option agreement.
 

 Reference to the plat mentioned in both the lease and the deed, which is recorded in Plat Book No. 2 at page 44, discloses that the alleyway in dispute was dedicated to the public on May 18, 1921, along with other streets and roadways in the addition created by D. A. Breard, Sr., the then owner; that it is thirteen feet wide and runs through the square between lots 4 and 9. It appears that the City of Monroe, by ordinance adopted on October 30, 1941, but not recorded until March 9, 1942, officially revoked the dedication of this alleyway on the ground that it was not used by the public at large and had, as an alley, become abandoned.
 

 
 *419
 
 Under a contract executed by Allen on June 11, 1942, the same property previously sold to the plaintiffs was conveyed to Joseph Fuller and Louis Milner, together with all of Allen’s “rights, title and interest in, under and to” the contract executed by him in favor of the plaintiffs on November 24, 1941, including his right to collect the monthly rentals from the plaintiffs and to receive the purchase price of $8,000 in the event they sought to exercise the option agreement. This agreement was subject to the contract previously executed and with full recognition of the rights of the plaintiffs thereunder. In this deed, Lots 4 and 9 and the West 10 feet of Lot 8 are conveyed under the identical description used in conveying the property to the plaintiffs on November 24, 1941, with the addition that the 13-foot strip is in this contract particularly and specifically described. The consideration Fuller and Milner paid Allen for this deed was $6,185.
 

 On or about December 30 following, the plaintiffs exercised their option agreement and purchased the property, paying the consideration therefor to the defendants. They continued to operate the business on the property, using all of the land indiscriminately, until, in 1946, objection was made to their title by a prospective purchaser. Upon the failure of the defendants to execute a quitclaim deed, they instituted this suit.
 

 Unlike the rule at common law, it is the public policy of this state that in order to affect third parties, all transactions touching upon or affecting title to real or immovable property must be recorded. As stated in the case of Baker v. Atkins, 107 La. 490, 32 So. 69, 70, “there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record”. See, also, McDuffie v. Walker, 125 La. 152, 51 So. 100; Soniat v. Whitmer, 141 La. 235, 74 So. 916; Loranger v. Citizens’ Nat. Bank of Hammond, 162 La. 1054, 111 So. 418; Dalbey v. Continental Supply Co., 165 La. 636, 115 So. 807; State ex rel. Hebert v. Recorder of Mortgages, 175 La. 94, 143 So. 15.
 

 Referring to the decision in the case of McDuffie v. Walker, this court, in the Soniat case, [141 La. 235, 74 So. 917] observed that since that time, “the once vexatious question of whether the purchaser of real estate can be affected by unrecorded claims against the property, even though at the time of the purchase he had actual knowledge of them, has been settled in the negative — let us hope forever.”
 

 It is the contention of the plaintiffs that under this doctrine the revocation of the dedication of this alleyway could not affect their rights since such revocation only became effective as to them on the date of its recordation, March 9, 1942; in the alternative, that if we hold this revocation did become effective upon its adoption on October 30, 1941, then that they acquired title to it by virtue of their acquisition of the
 
 *421
 
 property abutting thereon from Allen, since there is nothing that would indicate otherwise in their deed.
 

 On the other hand, it is the contention of the defendants that under the express provisions of Act 382 of 1938, when the municipal authorities of Monroe revoked the dedication of the alleyway in question “all of the soil covered by and embraced in such roads, streets or alleyways up to the center line thereof” reverted to the present owner of the land contiguous thereto, and that such revocation became effective immediately as to all parties since the law of registry does not apply to municipal ordinances, it being their argument that the only instruments that need be recorded to affect third persons are those specifically enumerated in the statutes of this state. Consequently, that when .they acquired the strip of land formerly embraced in this alleyway by particular description, they were entitled to rely on the public records and these failed to show Allen had divested himself of this property.
 

 The legislature, by its adoption of Act 382 of 1938 (as well as the prior act, Act 151 of 1910), vesting the police juries and the municipal corporations of this state with the power to, in their discretion, “revoke and set aside the -dedication of all roads, streets and alleyways laid out and dedicated to public use within their respective limits, when such roads, streets and alleyways have been abandoned or are no longer needed for public purposes” (Section 1), and providing that “all of the soil covered by and embraced in such roads, street» or alleyways up to the center, line thereof, shall revert to the then present owner or owners of the land contiguous thereto” (Section 2), did not intend to, and did not thereby, abrogate the law of this state with respect to registry.
 

 The above quoted language of Section 2 cannot be said to be free from ambiguity. Clearly the property in question here could not revert to the owner of the land contiguous thereto at the time of the revocation (Jack Allen) since he was not a former owner and had no reversionary right thereto. We must, therefore, determine just what the legislature intended in providing that title to such publicly dedicated passageways shall, when revoked, “revert to the then present owner or owners of the land contiguous thereto.”
 

 It is our opinion that the lawmakers intended such property should again become part and parcel of the property from which it had been originally carved and that the ownership thereof would then become vested in accordance with the ownership of the property contiguous thereto at the time of the revocation.
 

 D. A. Breard, Sr., by recording in the official records of Ouachita Parish the plat of the sub-division of the property owned by him showing the roads, streets, and alleyways he was dedicating to the public not only divested himself of his title to these roads, streets, and alleyways, but,
 
 *423
 
 in effect, conveyed them to the City of Monroe for the use and benefit of the public. It is true the recordation of this plat is neither a sale nor a contract with respect to the property in the true sense of the word; nor is the revocation of the dedication a sale or contract. Nevertheless, both of these transactions just as effectively transfer title to the property as if the same had been conveyed by a contract of sale, whether executed by a notarial act or an act under private signature.
 

 It is our opinion that until the revocation of the dedication of these roads, streets, and alleyways under the provisions of Acts 151 of 1910 and 382 of 1938 is duly recorded as required by law, it -cannot affect the rights of third parties. Clearly, therefore, when the plaintiffs purchased the lots described in their deed in accordance with the plat therein referred to showing that' the property was traversed by the alleyway in question, they had the right to assume that until the contrary appeared on the public records, this alleyway was still dedicated to public use.
 

 We therefore conclude that title to this alleyway vested in the plaintiffs on March 9, 1942, when the dedication was officially recorded, since they were the owners of record of the property contiguous thereto at that time.
 

 For the reasons assigned, our original decree is reinstated and, accordingly, the judgment of the lower court is amended by decreeing the portion of the alleyway in dispute to be the property' of the plaintiffs and, as thus amended, the judgment is affirmed. All costs are to be paid by the appellees.
 

 HAWTHORNE, J., adheres to his previous dissenting opinion.
 

 O’NIELL, C.
 
 J.,
 
 does not take part.