568 So.2d 623 (1990)
Dennis POTVIN Plaintiff-Appellee,
v.
WRIGHT'S SOUND GALLERY, INC. Defendant-Appellant.
No. 21,768-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
Rehearing Denied October 25, 1990.
*624 Peatross, Greer & Frazier by L. Edwin Greer, Shreveport, for defendant-appellant.
Daye, Bowie & Beresko by David P. Daye, Shreveport, for plaintiff-appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
SEXTON, Judge.
The defendant, Wright's Sound Gallery, Inc., appeals a judgment in favor of the plaintiff, Dennis Potvin, a former employee of the defendant, for unpaid wages, penalties, and attorney fees pursuant to LSA-R.S. 23:631 and 632. The defendant's reconventional demand for damages for violation of the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1401, et seq., was dismissed.[1] We affirm.
Wright's Sound Gallery is a corporation operating an electronics store, the stock in which is owned by Thomas and Brenda Bartle; the store both sells and services *625 electronic merchandise. Potvin was employed in the service department at Wright's from February 1, 1985, until April 13, 1988. At the time of his resignation, Potvin was earning $2000 a month, plus a ten percent commission on all service labor invoices. Additionally, Potvin had accrued two weeks (ten working days) vacation. This vacation, earned during the preceding year, February 1, 1987, to February 1, 1988, could have been taken any time during the ensuing year, February 1, 1988, until February 1, 1989.
Potvin gave Mr. and Mrs. Bartle written notice of his resignation on April 4, 1988, but remained employed by Wright's until April 13. On Potvin's final day of employment, he received a paycheck which comprised only his base salary. On April 18, 1988, Potvin made written demand upon Wright's through Mrs. Bartle for $952.30, the monetary value of a two-week paid vacation, and $192.04, ten percent of the service labor performed between April 1-13, 1988. Two checks, one in each of the requested amounts, were issued to Potvin by Mrs. Bartle on April 19, 1988. Prior to their being cashed, the defendant issued a stop payment order on both of the checks.
Potvin then initiated the instant lawsuit, seeking his unpaid commissions and vacation pay, plus the statutory penalties and attorney fees provided in LSA-R.S. 23:632. Wright's answered the petition, denying the wages were owed to Potvin and made a reconventional demand, alleging Potvin had violated the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1401, et seq. This claim stemmed from allegations that Potvin was moonlighting while employed at Wright's, servicing and repairing electronic equipment in competition with Wright's.
Following a bench trial, the trial court held for the plaintiff and rejected the reconventional demand. The trial court resolved all factual disputes in Potvin's favor. A judgment was signed awarding Potvin $192.04 in unpaid commissions, $952.30 in vacation entitlements, $11,206.80 in penalties, $4,500.00 in attorney fees, plus interest and costs.
The issues raised by this appeal are (1) whether the trial court erred in finding Potvin was entitled to unpaid commissions; (2) whether the trial court erred in finding Potvin was entitled to vacation benefits; (3) whether the trial court erred in finding Wright's was not in good faith in withholding these payments and thereby awarding penalties to Potvin; (4) whether, assuming they were appropriate, the trial court erred in calculating the penalties; (5) whether the trial court erred in awarding attorney fees; and (6) whether the trial court erred in dismissing Wright's unfair trade practices claim.
We note at the outset that several of the issues presented involve factual determinations. Our review is therefore guided by the mandate that an appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Hence, where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The original demand was brought pursuant to LSA-R.S. 23:631 and 632 which provide, in pertinent part:
§ 631. Discharge or resignation of employees; payment within three days after termination of employment
A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation....
§ 632. Liability of employer for failure to pay; attorney fees
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for *626 payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
The preliminary question, therefore, is whether the commission and vacation benefits were due at the time of Potvin's resignation under the terms of his employment.

TEN PERCENT COMMISSION
Commissions are considered wages for purposes of LSA-R.S. 23:631. Pearce v. Austin, 465 So.2d 868 (La.App. 2d Cir. 1985). Potvin received his commissions monthly, thereby falling within the requirement of LSA-R.S. 23:631 that the employment be by the hour, day, week, or month. But cf. Dore v. WHC Lease Service, Inc., 528 So.2d 235 (La.App. 3rd Cir.1988), and Van Dung v. Tel Ag Services, Inc., 407 So.2d 1339 (La.App. 3rd Cir.1981) (where the commission or bonus was calculated and payable annually and not by the hour, day, week, or month).
There is no dispute that the terms of Potvin's employment guaranteed him a ten percent commission on the service labor invoices and that from April 1-13, 1988 this commission totaled $192.04. Wright's argues, however, that because Potvin engaged in secondary employment without his employer's consent that Potvin violated his employment contract and, based upon Wright's interpretation of the contract, gave Wright's the authority to terminate Potvin without pay.
Potvin signed a document entitled "Employee Agreement" on May 2, 1985. Paragraph 7 of this document states that an employee may have no secondary employment unless cleared through the management. Paragraph 14 of the same document provides the sanctions for an employee's failure or refusal to abide by any of the employment regulations. Paragraph 14 provides: "I agree to abide by the above rules and I understand that observance of them is a condition of my continued employment. I understand that continued refusal to adapt to and to enforce company policy will be grounds for dismissal or suspension without pay."
Wright's interprets the phrase "without pay" as modifying both "dismissal" and "suspension." In other words, Wright's argues it was entitled to either suspend Potvin without pay or to dismiss him without pay. A second equally reasonable interpretation of this language is that Wright's could either dismiss Potvin or suspend him without paythe language "without pay" modifying only "suspension" and not "dismissal." It is well-settled that any ambiguity in a contract is to be construed against the party who prepared the contract. Kenner Industries, Inc. v. Sewell Plastics, Inc., 451 So.2d 557 (La.1984); Citizens Bank and Trust Company v. Robertson, 482 So.2d 867 (La.App. 2d Cir.1986), writ denied, 486 So.2d 754 (La.1986). The employment agreement in the instant case was prepared by Wright's and thus must be construed against them. We further note that Wright's interpretation of the employment contract to allow discharge without pay would render that contract unlawful under LSA-R.S. 23:634.[2] We must therefore conclude that the employment contract did not allow Potvin to be discharged without payment of wages. The ten percent commission constituted wages *627 due Potvin at the time of his resignation. The trial court committed no error in awarding Potvin the amount of his commissions, $192.04.

VACATION BENEFITS
A document entitled "Employee Benefits" sets out Wright's vacation policy. An employee with between two and five years employment at Wright's, such as Potvin, was entitled to two weeks paid vacation per year. There is no dispute that Potvin had accrued two weeks vacation at the time of his resignation. Nevertheless, Wright's argues that based upon an unwritten company policy prohibiting remuneration for an unused vacation, Potvin forfeited his vacation benefits by not taking his vacation prior to resignation. In support of this position, Wright's presented testimony from Mr. and Mrs. Bartle and three current Wright's employees that the policy at Wright's was either to take a vacation during the applicable year or to lose such vacation benefits. Potvin testified that he knew nothing of this policy; he had taken his vacation every year during his employment at Wright's.
Vacation pay, like commissions, is considered to be wages for the purpose of LSA-R.S. 23:631. Tompkins v. Schering Corporation, 441 So.2d 455 (La.App. 2d Cir.1983); Berteau v. Wiener Corporation, 362 So.2d 806 (La.App. 4th Cir.1978), writ denied, 365 So.2d 242 (La.1978). Indeed, several cases have gone so far as to hold that, in the light of LSA-R.S. 23:634, company policy cannot force an employee to forfeit a vested right to vacation pay upon the termination of his employment. Lee v. Katz and Bestoff, Inc., 479 So.2d 459 (La.App. 1st Cir.1985); Draughn v. Mart, 411 So.2d 1188 (La.App. 4th Cir. 1982), writ denied, 415 So.2d 944 (La.1982); Berteau v. Wiener Corporation, supra. However, it should be noted that the Louisiana Fifth Circuit Court of Appeal has allowed the forfeiture of vacation pay at termination of employment provided there is a company policy precluding compensation for unused vacation upon termination. See Landry v. Pauli's, Incorporated, 496 So.2d 431 (La.App. 5th Cir.1986), writ denied, 500 So.2d 428 (La.1987); Howser v. Carruth Mortgage Corporation, 476 So.2d 830 (La.App. 5th Cir.1985).
As we have noted, while this circuit has considered vacation pay to be wages under LSA-R.S. 23:631, Tompkins v. Schering Corporation, supra, we need not consider any conflict between the circuits on the question of whether company policy may preclude compensation for unused vacation pay. The resolution of this issue is unnecessary to a decision in the instant case. The trial judge resolved the factual disputes in this case against the defendant. Wright's therefore failed to convince the trial judge that the company policy precluded compensation for unused vacation time. In light of Potvin's testimony that he was unaware of this alleged company policy, the fact that none of the written documents detailing company policy and procedure mentioned the policy, and especially the fact that Mrs. Bartle, a co-owner of Wright's and admittedly aware of all company policies, delivered a check to Potvin for his vacation pay, we do not find manifest error in the trial court's conclusion. Potvin was entitled to the $952.30 in unpaid vacation benefits.

PENALTIES
LSA-R.S. 23:632 provides for penalties in a situation such as this where an employer has failed to timely pay the wages to an employee who has resigned or been discharged. An employer's good faith, non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability, permits a court to excuse the employer from the imposition of penalty wages. Carriere v. Pee Wee's Equipment Company, 364 So.2d 555 (La.1978); Thomas v. Maxwell Hardware & Lumber Co., 505 So.2d 899 (La.App. 2d Cir.1987).
The question of Wright's good faith in failing to timely pay the wages due Potvin is again a factual question. Although Wright's has alleged numerous bases which might reasonably have supported a determination that Wright's was in good faith, we do not find the trial court was *628 clearly wrong in ruling otherwise. Again, the most telling evidence dictating against a finding of good faith is the undisputed fact that checks were initially issued to Potvin by Wright's agent, Brenda Bartle. The checks were issued the day after Potvin made written demand upon Wright's; Mrs. Bartle therefore had sufficient time to consider whether the amounts claimed were actually due Potvin. Nevertheless, the checks were issued to Potvin the following day. Equally damaging to professions of good faith is the fact that the Bartles did not inform Potvin that payment had been ordered stopped on the checks, rather Potvin learned of this through his bank. We must yield to the trial court's reasonable credibility evaluations and reasonable factual inferences in its finding that Wright's did not possess the good faith necessary to preclude the imposition of penalty wages.
Wright's raises a further argument concerning the penalty wages, asserting that the trial court erred in calculating them. LSA-R.S. 23:632 provides for 90 days wages at the employee's daily rate of pay. Wright's argues that, to convert Potvin's monthly salary into a daily wage, all days in the month, rather than merely working days, should be considered in the calculation. The trial court committed no error in calculation; a worker's usual holidays are excluded in the computation of penalty wages under LSA-R.S. 23:632. Washington v. Buffalo Mills Lumber Company, Inc., 451 So.2d 665 (La.App. 1st Cir.1984). We note parenthetically that Potvin's final undisputed paycheck, comprising his pro-rated April 1988 base salary was calculated solely on the nine days Potvin actually worked between April 1-13, 1988. The calculation used to compute that paycheck, using only working days, was devised by the Bartles. The same calculation formula is appropriate for determining the amount of penalty wages. There was no error in the award of $11,206.80 in penalty wages.

ATTORNEY FEES
Wright's acknowledges that attorney fees are recoverable in any well-founded suit for unpaid wages, regardless of whether or not there existed a good faith dispute. Carriere v. Pee Wee's Equipment Company, supra; Thomas v. Maxwell Hardware & Lumber Co., supra. In light of our conclusions that the commission, vacation benefits, and penalty wages were all due, the imposition of an attorney fee award was appropriate.

RECONVENTIONAL DEMAND
The trial court found that Wright's failed in its burden of proof on the reconventional demand. Potvin admitted at trial that he had been moonlighting during his employment at Wright's. However, Potvin denied soliciting business from Wright's. A court must balance a former employee's right to leave his employ to open a business competitive with that of his former employer against the employer's right to fair play. Core v. Martin, 543 So.2d 619 (La.App. 2d Cir.1989); Huey T. Littleton Claims Service, Inc. v. McGuffee, 497 So.2d 790 (La.App. 3rd Cir.1986). Where the former employee did not solicit customers or divert business from his former employer prior to the end of the employment relationship and there has been no showing that the former employee intended to injure his former employer's business, an unfair trade practices claim is properly denied. Core v. Martin, supra. On this record and considering the trial court's specific credibility evaluations, we cannot say that the trial court committed manifest error in determining that the actions of the plaintiff in moonlighting after hours constituted an unfair trade practice within the meaning of LSA-R.S. 51:1401, et seq.
This case is distinguishable from that relied upon by Wright's. In Dufau v. Creole Engineering, Inc., 465 So.2d 752 (La.App. 5th Cir.1985), writ denied, 468 So.2d 1207 (La.1985), the plaintiff, Dufau, was employed by Creole as a salesman of mechanical products. Dufau filed suit for unpaid wages following his resignation from Creole. Creole reconvened alleging Dufau had solicited and diverted business from Creole for his own company while still employed by Creole. The trial court granted *629 relief to Creole on the reconventional demand and the appellate court affirmed. The evidence presented by Creole on its reconventional demand far exceeds any evidence presented by Wright's in the instant case. While still employed by Creole, Dufau organized a sole proprietorship, opened a checking account in the name of his new business, and had business cards printed. Additionally, Dufau took orders on behalf of his sole proprietorship for products from three companies which had previously been buying these products from Creole.
In the instant case, there was no evidence presented of a solicitation and diversion of Wright's customers by Potvin. We also note that unlike Dufau, Potvin did not open his own electronics repair business until he had left Wright's employment. The trial court concluded that the actions of Potvin in performing apparently limited acts of electronic repair for his own monetary benefit while still employed by Wright's did not constitute an unfair trade practice.

CONCLUSION
For the reasons assigned, the trial court judgment is affirmed at appellant's cost.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, LINDSAY, FRED W. JONES, Jr. and HIGHTOWER, JJ.
Rehearing denied.
NOTES
[1] Although the trial court's reasons for judgment reflect its intent to deny the reconventional demand, reference to and the disposition of the demand were inadvertently omitted from the signed judgment. Neverthless, the failure of the judgment to specifically address the issue operates as a tacit rejection of the reconventional demand. Villars v. Faivre, 36 La.Ann. 398 (1884); Soniat v. Whitmer, 141 La. 235, 74 So. 916 (1916); Mexic Bros., Inc. v. Sauviac, 191 So.2d 873 (La.App. 4th Cir.1966). See also, Thomas v. Maxwell Hardware & Lumber Co., 505 So.2d 899 (La.App. 2d Cir.1987) (Sexton, J., concurring).
[2] LSA-R.S. 23:634 reads as follows:

§ 634. Contract forfeiting wages on discharge unlawful
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.