STOKER, Judge.
Arden Dufhilo filed suit pursuant to LSA-R.S. 23:631 et seq. against her former employer, Richard E. D’Aquin d/b/a Daily Advertiser Independent, Inc., for payment of accrued overtime, unused vacation time, penalties, and attorney fees. The trial court awarded plaintiff $1,678.88 in overtime, $340 in unused vacation time, $6120 in penalties, and $2500 in attorney fees. In finding for the plaintiff, the trial court relied upon an expert witness’s findings, presumably in the form of a report. However, this report was not introduced into evidence and appears in the record only to the extent that part or all of the report appears to be included in the trial court’s written reasons for judgment.
Defendant appealed, asserting that it was error for the trial court to render judgment based on the expert’s opinion and conclusions since they were not offered or admitted into evidence. Plaintiff answered the appeal requesting an.increase in the attorney fees awarded by the trial court as well as additional attorney fees for legal services rendered on appeal. In the interest of justice, we remand for the introduction of the expert's findings. In view of the action we will take in this case, we pretermit consideration of the appellee’s request for attorney fees.
TRIAL COURT’S REASONS FOR JUDGMENT
In order that the issue in this case may be more fully understood, we set forth in full the trial court’s written reasons for judgment:
“REASONS FOR JUDGMENT
“Plaintiff, Arden A. Dufilho [sic] is entitled to accrued overtime pay, which, according to LSA R.S. 23:631, was due three (3) days after termination of employment; penalties according to LSA R.S. 23:632 equaling
‘... ninety (90) days wages at the employee’s daily rate of pay, or else for full wages from the time of [sic] the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages, [sic]....’;
and attorney fees because the employer, Daily Advertiser Independent, Inc., in an arbitrary and unreasonable manner under the circumstances, denied Arden Dufilho her wages, Sheldon LeDoux v. Bay State Management Corporation 499 So.2d 945 (La.App. 3 Cir.1986). ‘Vacation pay is considered “wages” for purposes of statute requiring payment of amounts due employee within three days of discharge or resignation LSA-R.S. 23:631’, [sic] Potvin v. Wright’s Sound Gallery, Inc., 568 So.2d 623, [sic] La.App.2.Cir.1990). Defendant failed to prove that company policy precluded compensation for unused vacation pay.
“A contract of labor existed between The Daily Advertiser Independent Inc. and Arden Dufilho, where Dufilho agreed to supply services and The Daily Advertiser agreed to remuneration by agreement. This contract is protected under our law, which specifically provides for the worker to receive such remuneration within a definite period of time upon dissolution.
*524 “Oh April 14, 1989, plaintiff, Arden Du-filho, resigned from her position as entertainment editor, which she had held from October 8, 1984. According to Charles Lennox’s testimony he told Dufilho in a meeting that ‘if she did not improve the content of the section, I was going to run her butt off.’ She told him, ‘You just did,’ and left her employment.
“During her employment she kept a time card which was provided to her for recording her ‘flexible hours’. The fact that her hours were ‘flexible’ is not disputed by her supervisor Charles Lennox, the managing editor of The Daily Advertiser, who would make ‘mark-outs’ on plaintiff’s time card and allegedly contemporaneously created a reporter’s notebook beginning January 2. [sic] 1987 reflecting the hours Arden Dufil-ho didn’t work according to Lennox.
“Testimony by the managing editor revealed that he, without her knowledge, kept a notebook on Arden Dufilho; however, he did not on any other of his staff of twenty to thirty employees.
“Early on when plaintiff did not receive overtime pay, she complained to Lennox who in effect told her if she didn’t like it, not to let the door hit her on her butt as she left. Needing a livelihood, plaintiff-remained but kept a copy of her time sheets.
“Even though Lennox’s entries into the notebook reflect notes to the effect that ‘Arden late’, she was never confronted by the managing editor. This notebook, entered into evidence in this case, is entirely in Lennox's handwriting. He claims that he made entries into the notebook contemporaneously with Dufilho’s transgressions:
‘Q: But are you — You’re telling the court [sic] that contemporaneous with the happenings of these thing [sic], you made these entrances into your notebook; is that correct?
A: Correct’
“Richard Lennox also testified that he did not know from his own observations whether or not Arden Dufilho was putting in the hours she claimed on her time card, since his job does not necessarily require him to be in the office during business hours or to be with plaintiff while doing her job. He was unable to testify of his own knowledge whether Dufilho actually did not work during the hours he docked her.
“Arden Dufilho’s job required her to compile entertainment information for The Daily Advertiser. The effort to inform the community about cultural events is more than a job, it is a labor of love, contributing to public participation and education. These are long term effects, the more immediate is the financial gain for the newspaper who has contracted for this labor to be performed.
“Dufilho was a ‘good writer’ for the newspaper, according to testimony and considering her job description she could not have functioned without gathering materials at hours outside of the office. She covered the U.S.L. Theater, The Fine Arts Foundation, Lafayette Community Concerts, Lafayette Concert bands and many other public events for the newspaper. Arden Dufilho from time to time participated in some of the cultural productions. However, no evidence showed that she charged her employer for the time spent on those four (4) occasions: [sic]
“At issue in part is the reporter’s notebook in which the managing editor kept a time profile on Arden Dufilho. According to his own testimony he kept this book, using the same pen at all occasions.
‘Q: And it was all in the same pen, was it hot?
A: I always use the same pen
Q. Did I understand you correctly before we broke for lunch to testify that you use the same pen all the time?
A. Yes, sir, I do.’
“The sameness of the entries in ink and style and when these entries had been made were questioned at trial. The defendant claimed later in the proceedings that he maintained a calendar and on a bi-weekly basis transferred the information into the notebook, while testifying earlier that he made contemporaneous entries with Dufilho’s transgressions.
*525 ‘Q: ... You said your [sic] maintained [sic] a calendar that you kept your [sic] notes on; would you make the entries in your notebook on a daily basis or on a bi-weekly basis?
A: On a [sic] bi-weekly
Q: From the notes on your calendar?
A: Yes sir’
“To clear the uncertainty surrounding this document, this court ordered a forensic document examiner, Robert G. Foley, to examine the notebook. The questionable handwritten entries dating from Jan. 2, 1987 to April 8, 1989, covering the time period of claim in this case, were examined by microscopic and comparison tests with the following results:
‘The 1987 entries were made partially with different pens and at different times, however several blocks of multiple entries were all written about the same time.
The 1988 entries were found to be written with the same variations as the previous year with the exception of pages '5 and 6, which appear to have been written at the same time.
The 1989 entries were found to be multiple entries, however, it was found that these entries were not written on a daily basis and were written with the same pen for 3 month [sic] at the same time.’
“In summary from October 1988 to April 1989 the entries were written at one time in blocks, as were entries dating back to March 1987 with only one entry in that entire time period being a single entry. The expert commented on the pristine condition of those pages in the notebook considering the bi-weekly entries allegedly made by Lennox.
“This evidence destroys Lennox’s testimony that he made entries in his notebook bi-weekly. The court finds by a preponderance of the evidence that the subject notebook was manufactured after Dufilho was terminated.
“These findings together with the fact that the managing editor kept a notebook on Arden Dufilho and no other employee, beginning in 1987, the time period for this claim, support the proposition that her employer acted in an arbitrary and unreasonable manner, under the circumstances, in denying Arden Dufilho her just wages and vacation pay. The claim for vacation pay in favor of Arden Dufilho has been validated by testimony that there was no hard and fast ‘use it or lose it’ policy applied by The Daily Advertiser.
“Accordingly, there is judgment in favor of plaintiff as follows:
1. Amount of Overtime due $ 1,678.88
2. One week vacation pay due $ 340.00
3. Penalties ($68 per day x 90 days) $ 6,120.00
4. Attorney’s fees $ 2,500.00
SUM TOTAL $10,638.88
Cost to be paid by defendant, including the expert fees of $400.00.”
OPINION
At the close of the trial, the trial judge stated:
“THE COURT: As I informed the attorneys in a Chamber conference, because of the issue of good faith and in order not to do an injustice, I plan to appoint a forensic expert on ink to see if he can determine whether P-8, the pertinent part of P-8, was written at one time or over a two year period. I would not want to make that decision without some help. It’s very important, and it involves the integrity of Mr. Lennox and I wouldn’t want to tarnish it in any way without absolute proof. And it doesn’t mean that I suspect that he did it or he did anything wrong. The objective of the Court is to render a just verdict, and that involves a search for the truth. And that’s the purpose for which the Court will appoint this expert, if he can tell me whether he can determine that or not. If he says he can, I will appoint his result.
“As soon as I hear, I shall inform the attorneys of the results I have gotten.” (P-8 is Lennox's reporter’s notebook.)
Approximately two months after trial, the trial judge appointed Robert G. Foley as an expert witness and ordered the Clerk *526 of Court to forward Lennox’s notebook to Foley.
La.C.E. art. 706(A) provides:
“A. Civil cases. In a civil case, the court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. A witness so appointed shall be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party.”
The sole error on which appellant bases its appeal is the fact that the Foley report was not filed in evidence. Appellant makes no assignments addressed to the merits. In a reply brief appellant also contends that the report standing alone is mere hearsay. Appellant correctly contends that evidence not admitted into evidence at the trial of the case may not be considered in deciding the case on the merits. In its brief appellant “submit[s] that the decision of the court below should be reversed and remanded for further proceedings.” Without other consideration we would be inclined to the view that appellant is entitled to that relief, not merely to correct the technical absence of the report from the record, but to permit counsel to subject Robert G. Foley to cross-examination. Although La.C.E. art. 706(A) does not so provide, it seems to us that fundamental fairness requires that a court-appointed expert should be subject to cross-examination.
However, there is another consideration to be taken into account. Although not reflected by the record itself, counsel for plaintiff-appellee makes the following assertion in brief to the effect that appellant, through its counsel, waived the right to cross examine Mr. Foley:
“On February 19, 1991, Judge Mouton, on his own motion, appointed Robert G. Foley as the Court’s expert witness to examine P-8. (TR. 532) On May 20, 1991, Judge Mouton received Mr. Foley’s May 17, 1991 cover letter, attached bill and report. Shortly thereafter, the Judge’s office provided a copy of the Foley packet to counsel for Plaintiff and Defendant. Thereafter, a post trial conference was held with Judge Mouton and all counsel of record, wherein the Judge reviewed Mr. Foley’s report with counsel. The Court indicated that he was going to rely on the Foley report and offered the parties the opportunity to depose Mr. Foley. Counsel for Defendant/Appellant requested a transcript of Mr. Lennox’s testimony which was transcribed by the court reporter and provided to both counsel (TR. 534 through 594).
“By letter dated August 12, 1991, to Judge Mouton, counsel for Defendant/Appellant stated in part:
‘Thank you for providing to the Defendants a copy of Mr. Robert Foley's report of May 16, 1991 and the copy of the testimony of Mr; Charles Lennox ... (After reviewing his interpretation of Mr. Lennox’s testimony and the Foley report, counsel concluded)
On behalf of our client, The Advertiser, we do not wish to expend any additional sums of money defending what we believe to be a meritless claim. We do [sic] see that the testimony of Mr. Foley will add anything to the trial of this matter. ...’
“On August 22, 1991, counsel for Defendant wrote Judge Mouton again stating ‘our position is simply that from the standpoint of our client, we do not wish to undergo the expense of deposing this gentleman.’ ”
Counsel for appellant do not deny these allegations contained in appellee’s brief but in a reply brief refer to them as “references to extra judicial matters which are not before this court.” Although the assertions of plaintiff-appellee are dehors the record, we feel that they must be dealt with in some way to effect the ends of justice.
*527 Our approach in the disposition of this appeal is influenced somewhat by the fact that the trial judge who heard and decided the case, the Honorable John Rixie Mouton, has since retired, a fact of which we take judicial notice.
As noted above, the relief which appellant seeks in this court is a remand for further proceedings. This is the course we will take. Under the authority of LSA-C.C.P. art. 2164 courts of appeal may remand a case to the trial court for introduction of additional evidence to prevent a miscarriage of justice. Huval Baking v. Workers’ Comp. Bd., 594 So.2d 1028 (La.App. 3d Cir.1992); St. Pierre v. Hirschfeld, 569 So.2d 222 (La.App. 1st Cir.1990); Whitehead v. Texada, 520 So.2d 1189 (La.App. 3d Cir.), writ denied, 522 So.2d 568 (La.1988); and Jackson v. Wal Mart Properties, Inc., 443 So.2d 3 (La.App. 3d Cir.1983).
In remanding this case we authorize the trial judge who shall hear this matter to conduct appropriate inquiry to determine whether the defendant-appellant waived the right to cross-examine Mr. Foley and whether the ease may be considered to have been submitted upon the filing in evidence of the Foley report which we direct be done.
Only in the event that the trial judge should conclude appellant did not waive the cross-examination of Mr. Foley, we authorize and direct the following. Upon remand, the trial court shall reopen this case for the limited purpose of permitting full compliance with La.C.E. art. 706(A). In effect, we grant a new trial for the limited purpose, as authorized by LSA-C.C.P. art. 1971, of permitting the trial judge to admit the Foley report as evidence. Upon admission, both parties to this litigation shall be accorded the right to cross-examine Mr. Foley for trial purposes. The case shall be held open for the purpose of permitting counsel to depose Mr. Foley for discovery or for trial purposes. He may be called to court to testify if he is willing to do so or is subject to subpoena. Counsel for both parties may question Mr. Foley as though he were an adverse witness.
Inasmuch as the only issue in this appeal (the only error assigned by appellant) was the deciding of this case on the basis of the Foley report which was not in the record, no evidence as to other issues may be introduced on remand. However, we leave it to the sound discretion of the trial court to permit the introduction of additional evidence by handwriting experts to counter or support the opinion or findings of Robert G. Foley, and the trial court may appoint additional experts of its own if the court deems it appropriate.
Both of the alternative dispositions set forth above presuppose that the Foley report can be made available to the trial judge. While we would not anticipate any difficulty in this regard, in that eventuality, the trial judge is authorized and directed to reopen the case for further evidence.
We make no ruling on the contention of appellant that the Foley report as used by Judge Mouton was inadmissible. To begin with, it was not assigned as an error. More importantly, since we remand the case for further proceedings, it would be premature for us to express an opinion on the question. We leave it for development on remand, if appellant wishes to pursue this matter, and for ruling by the trial court. In view of our finding in this case we will set aside and vacate the judgment which is here on appeal. Upon remand, and after the case is finally submitted, the trial judge is instructed to decide the case anew on the basis of the entire record.
DISPOSITION
For the reasons given above, the judgment of the trial court dated October 9, 1991, is set aside and vacated and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. We assess the costs of this appeal one-half to appellant and one-half to appellee.
JUDGMENT VACATED AND CASE REMANDED.