ERNEST FREEMAN, III
v.
MEDICAL SYSTEMS, INC
No. 2008 CA 2372.
Court of Appeal of Louisiana, First Circuit.
August 4, 2009.
Not Designated for Publication
THOMAS J. FRIERSON, Counsel for Plaintiff/Appellee, Ernest Freeman, III.
Alexis A. St. Amant, Counsel for Defendants/Appellants, Daniel V. Smith, Jonathan D. Smith and Medical Systems, Inc.
Before: KUHN, GUIDRY, and GAIDRY, JJ.
GUIDRY, J.
A company and two of its original directors appeal a judgment of the trial court ordering the directors to reimburse the corporation certain sums received by them as alleged excess compensation and benefits and for failing to award damages based on the alleged unfair trade practices and competition engaged in by a former director and employee of the corporation. For the following reasons, we reverse in part, vacate in part, affirm in part and remand.

FACTS AND PROCEDURAL HISTORY
On April 17, 2006, plaintiff, Ernest Freeman, III, as a former employee of Medical Systems, Inc. (MSI), filed a petition in which he asserted that at the time his employment was terminated, he was owed past due wages that had not been paid to him. Subsequent to filing his claim for past due wages, plaintiff filed a second petition under the same docket number seeking the involuntary liquidation of MSI, naming MSI, Daniel V. Smith and Jonathan D. Smith as defendants. In that petition, plaintiff stated that he and the Smiths were the sole shareholders in MSI and that until April 10, 2006, the board of directors for MSI also consisted of all three shareholders. Plaintiff further alleged that "the object of the corporation [MSI] has wholly failed or has been entirely abandoned, and the corporate assets are insufficient to pay its creditors and therefore should be placed in involuntary liquidation."
MSI denied owing plaintiff any past due wages in answer to the first petition. In answer to the petition for involuntary liquidation, MSI and the Smiths (collectively "defendants") denied the allegation that the corporation had entirely abandoned its object and "specifically alleged that all just debts for which [MSI] is liable have been paid." Also in response to the petition for involuntary liquidation, the defendants filed a reconventional demand seeking reimbursement for costs and attorney fees incurred in defending against plaintiffs claims. Plaintiff denied the allegations asserted in the reconventional demand.
Following the resolution of various discovery matters, plaintiff filed a rule against the defendants seeking the issuance of a temporary restraining order and preliminary and permanent injunctions to halt the alleged depletion of MSI's assets and distribution of dividends in detriment to the plaintiffs pending suit for involuntary liquidation of the corporation. The trial court issued a temporary restraining order restricting the actions of the defendants as requested in plaintiffs rule and set the requests for issuance of preliminary and permanent injunctions for hearing. In response to the rule, defendants filed a peremptory exception urging the objection of no right of action, requested the issuance of preliminary and permanent injunctions to prevent plaintiff from selling or "in anyway profiting personally from [the] sale of information or other assets" of MSI, and sought dissolution of and damages for the issuance of the temporary restraining order. Thereafter, defendants amended their reconventional demand to assert a claim for damages based on plaintiffs alleged conversion of the assets of MSI.
Prior to a trial on the merits, the trial court rendered judgment granting the parties reciprocal preliminary injunctions, without bond, to "restrain, prohibit and enjoin all parties...from alienating, mortgaging, encumbering, concealing, parting with, disposing of or hypothecating any of the assets of MSI. The court further ordered the plaintiff not to "alienate or sell any of the assets of his company, E.F. Research, without court approval."
Also prior to the trial on the merits, plaintiff amended his petition for involuntary liquidation to assert that the Smiths should be held personally liable because they "entered into a course of action, which includes, but is not limited to, the sale of all the assets of MSI, the restructuring of assets and liabilities of the corporation... so they would receive unlawful dividend(s) to the detriment of MSI and its creditors" and "they have received salaries and fringe benefits, to the detriment of MSI and its creditors." The defendants peremptorily excepted to amended petition of involuntary liquidation to raise the objection of no right of action and later filed another peremptory exception raising the objection of prescription relative to the plaintiffs claim in his first petition for past due wages.
Trial in this matter was held over the course of two separate dates, June 21, 2006 and September 12, 2007, following which the trial court rendered a judgment that was signed on February 27, 2008, wherein it decreed that plaintiffs claim for past due wages was denied as prescribed; that the claims raised by defendants in their reconventional demand were denied; that the Smiths "reimburse [MSI] for all sums and benefits received by each after the termination of [plaintiff] which were in excess of those wages and benefits received by each for a full year prior to [plaintiffs] termination"; and that MSI be liquidated once all the assets of the corporation were aggregated.

ASSIGNMENTS OF ERROR
Defendants have appealed the February 27, 2008 judgment, contending that the judgment should be reversed based on the following alleged errors:
I. The court erred by denying the Exception of No Right of Action filed by the [defendants].
II. The court erred in ordering that the Smiths reimburse MSI all sums and benefits they received, after termination of [plaintiff], which were in excess of the wages and benefits they received for the year before the termination.
III. The court erred in denying the Reconventional Demand of [defendants] for the conversion of the assets of MSI by [plaintiff].
Plaintiff answered the appeal, seeking reversal of that portion of the trial court's judgment that denied his claim for past due wages against MSI and against the Smiths personally; however, because plaintiff failed to brief this issue, this claim is deemed abandoned. Uniform Rules  Courts of Appeal, Rule 2-12.4; Carson v. Witty, 471 So. 2d 1003, 1004 n.1 (La. App. 1st Cir. 1985).

DISCUSSION
In their first assignment of error, defendants assert that the trial court erroneously denied the peremptory exception raising the objection of no right of action. We find merit in this assignment of error.
In order for a party to bring a claim for loss sustained by the corporation as a result of a breach of fiduciary duty, the shareholder must bring a derivative action on behalf of the corporation. Silliman Private School Corp. v. Shareholder Group, 01-0964, p. 12 (La. App. 1st Cir. 5/10/02), 819 So. 2d 1088, 1096, writ denied, 02-1501 (La. 9/20/02), 825 So. 2d 1176. It is established that where the breach of fiduciary duty causes loss to a corporation itself, the suit must be brought as a derivative or secondary action. However, where the breach of a fiduciary duty causes loss to a shareholder personally, the shareholder may sue individually to recover his loss. So, if a shareholder suffers only an indirect loss in the form of a decline in the value of his stock resulting from a loss sustained by the corporation due to mismanagement and/or breaches of fiduciary duty, that shareholder may only bring a derivative action on behalf of the corporation. However, if the breach of fiduciary duty causes a direct loss to the shareholder, but not the corporation, that shareholder may have a right to sue individually. Palowsky v. Premier Bancorp, Inc., 597 So. 2d 543, 545 (La. App. 1st Cir. 1992).
In the instant matter, plaintiff suggests that he was not required to file a shareholder's derivative action because of his unique standing as an alleged creditor of the corporation in addition to being a shareholder. There is no merit in this argument. Although plaintiffs claim for past due wages was a direct loss for which he could sue individually,[1] the claims alleging that the corporation's debts and liabilities were restructured and its assets sold, restructured and generally depleted to declare unlawful dividends and that the Smiths received payment of excess salaries and fringe benefits to the detriment of MSI are not claims of direct loss suffered by plaintiff. Rather these claims, as specifically alleged in his rule and amended petition for involuntary liquidation, are claims of direct loss to the corporation. Therefore, relative to those claims of direct loss to MSI, plaintiff was required to file a shareholder's derivative suit pursuant to La. C.C.P. arts. 611-616. Since plaintiff did not file a shareholder's derivative action, the trial court clearly erred in failing to sustain the peremptory exception urging the objection of no right of action relative to the claims asserted by the plaintiff that would constitute a direct loss to MSI. We therefore reverse that portion of the trial court's judgment overruling the exception and hereby sustain the exception. However, because the grounds for the objection raised in the peremptory exception can be removed by amendment of the pleadings, we will remand this matter to the trial court to allow for such amendment within a reasonable time period as set by the trial court. La. C.C.P. art. 934; see also La. C.C.P. art. 613.
Moreover, in regard to defendants' second assignment of error, we conclude that pursuant to our reversal of the trial court's ruling on the peremptory exception raising the objection of no right of action, we must vacate that portion of the trial court's judgment ordering the Smiths to reimburse MSI for the payment of alleged excess salary compensation and benefits. Such relief can only be properly granted pursuant to a shareholder's derivative suit.
Finally, in their third assignment of error, defendants contend that the trial court erred in denying their reconventional demand for the financial loss suffered by MSI as a result of the plaintiffs alleged wrongful conversion of contracts held by and payments owed to MSI for criminal background checks. We find no merit in this assignment of error.
Although not specifically characterized as such, the claim of wrongful conversion asserted by defendants in their reconventional demand is an allegation of unfair trade practices and competition subject to the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq. That law does not prohibit sound business practices, the exercise of permissible business judgment or appropriate free enterprise transactions. To be unfair, the conduct must offend established public policy. Fraud, deceit and misrepresentation constitute deceptive practices. A defendant's motivation is a critical factor; the actions must have been taken with the specific purpose of harming the competition. SDT Industries, Inc. v. Leeper, 34,655, pp. 9-10 (La. App. 2d Cir. 6/22/01), 793 So.2d 327, 332-333, writ denied, 01-2558 (La. 12/7/01), 803 So. 2d 973.
Thus, in evaluating a claim alleging unfair trade practices and competition, this court outlined the following considerations:
In the absence of a contrary agreement, an employee is free to compete with his former employer. Orkin Exterminating Company v. Foti, 302 So.2d 593, 596 (La. 1974). Competition and free enterprise are favored. As long as conduct is neither unlawful nor offensive to public policy, persons are able to discuss changes of employment, effectuate a change of employment, plan to compete and take preliminary steps in furtherance of that plan. United Group of National Paper Distributors, Inc. v. Vinson, 27,739, p. 16 (La. App. 2nd Cir. 1/25/96), 666 So.2d 1338, 1348, writ denied, 96-0714 (La. 9/27/96), 679 So.2d 1358.
In order to determine what constitutes unfair competition involves a balancing between the right of the employee to individual freedom on one hand and the right of the employer to honest and fair competition and the protection of business assets and property in the nature of trade secrets on the other hand. National Oil Service of Louisiana, Inc. v. Brown, 381 So.2d 1269, 1273 (La. App. 4th Cir. 1980). Solicitation of customers after the end of an employment relationship does not form the basis for a claim of unfair competition. Ahmed v. Bogalusa Kidney Care Center, 560 So.2d 485, 489-90 (La. App. 1st Cir.), writ denied, 564 So.2d 324 (La. 1990).
A former employee who enters business in competition with his former employer necessarily utilizes the experience he acquired and the skills he developed while in a former employment. While the employer may by contract obtain limited protection from former employees, by law he may be entitled to protection against wrongful appropriation and use by former employees of things specially developed by the employer in his business, such as lists of customers (particularly route sales) whose regular patronage has been acquired by the employer's advertising, solicitation and organized effort. Considerations as to the type of protection to be afforded to the employer in a specific case include the manner in which and the purpose for which customer lists are compiled; the conduct and motivation of the employee before and after termination and the nature of the representations made to the customer by the former employee; and the existence of a scheme to take over all or a substantial part of the former employer's business, or of an intent to injure the former employer's business. National Oil Service, 381 So. 2d at 1273. A critical factor is a defendant's motivation; the actions must have been taken with the specific purpose of harming the competition. Conduct does not violate the [Louisiana Unfair Trade Practices and Consumer Protection Law] unless it is undertaken with the specific intent to harm the competition. United Group, 666 So.2d at 1346.
In order to find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information. Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La. 1992). An employee is duty bound not to act in antagonism or opposition to the interest of the employer. Every one, whether designated agent, trustee, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business must be loyal and faithful to the interest of such other in respect to such business or purpose.
Boncosky Services, Inc. v. Lampo, 98-2239, pp. 11-12 (La. App. 1st Cir. 11/5/99), 751 So. 2d 278, 286-87, writ denied, 00-0322 (La. 3/24/00), 758 So. 2d 798 (emphasis added).
The defendants, in an attempt to prove that plaintiff deliberately tried destroy or usurp the business of MSI, presented some evidence to show that plaintiff made efforts to completely take over MSI prior to and following the termination of his employment. The defendants also presented evidence that the plaintiff officially organized his company, EF Research, LLC, on April 7, 2006, and that a majority of MSI's customers were serviced by EF Research, LLC.
Additional evidence presented at trial clearly demonstrated that plaintiff was the only employee of MSI that was certified as an authorized agent to perform criminal background checks, and that on March 31, 2006, his employment was terminated. We find no basis in law or reason to support the defendants' assertion that although plaintiff was terminated as an employee, as a shareholder he was expected to continue to perform background checks on behalf of MSI "under his authorized name in accordance with the contracts signed." Furthermore, as early as mid-April 2006, defendants attempted to sell the background checks portion of the corporation's business to James Bealer, as evidenced by a sales receipt introduced into evidence that lists "Criminal Background Checks" as the description of the item sold and "2,500.00" as the amount or value of the item sold on April 20, 2006.[2]
Moreover, despite defendants' assertions and testimony by the Smiths that plaintiff purposefully intercepted and solicited MSI's background check clients, plaintiff testified that after starting his company, he never represented himself as being MSI nor did he ever receive an application for criminal background checks from clients who thought he was doing business as MSI. He admitted that following the termination of his employment, he did "go after" the same clientele that MSI had for background checks because he "knew them all on a first-name basis." However, in regards to his servicing applications he received for background checks that were on forms listing both his name and MSI,[3] he testified "MSI was not the agent. Ernest Freeman is the authorized agent. MSI is not, nor is EF Research the agent. The law reads that the agent, the authorized agent is a person, not a company. So I was doing business as Ernest Freeman, authorized agent." He testified that he did not do any business for EF Research, LLC prior to his resigning from the board of directors for MSI[4] and that he did not collect money for work he did for MSI for EF Research, LLC.
In a nutshell, plaintiff testified that it was his belief, based on the fact that MSI did not hire an authorized agent after terminating his employment, that MSI no longer engaged in the background checks business, and so he did not believe he took business from MSI, because without an authorized agent, MSI was not able to perform background checks. He further explained that he felt obligated to service the contracts presented to him, especially in relation to background checks for nursing homes, because "the law reads that a nursing home has to have a background check done within 30 days or they're out of compliance with the state.... So, therefore, MSI couldn't produce the product. So they are out of business. [The Smiths] made no effort to find another authorized agent as far as I know." Jonathan Smith acknowledged that MSI was "not able" to perform the work on the background checks contracts held by MSI.
Based on our review of the evidence presented, we cannot say that the trial court was clearly wrong in finding that the plaintiff did not engage in a course of conduct that would constitute unfair trade practices or competition. See SDT Industries, Inc., 34,655 at 16, 793 So. 2d at 335. Thus, we reject the allegations raised in the defendants' final assignment of error.

CONCLUSION
Having found that the trial court erred in failing to sustain the peremptory exception filed by the defendants objecting to the plaintiffs right to assert claims of MSI in his personal capacity, we reverse that portion of the judgment and sustain the exception. Pursuant to our sustaining of the peremptory exception, we vacate that portion of the judgment ordering the Smiths to reimburse MSI and remand this matter to the trial court to allow the plaintiff an opportunity to amend his petition in order to remove the grounds of the objection of no right of action for which the peremptory exception is herein sustained. We affirm the trial court's denial of the defendants' claim for damages based on unfair trade practices and competition. Appeal costs are assessed one-half to plaintiff, Ernest Freeman, and one-half to defendants, MSI, Daniel Smith, and Jonathan Smith.
REVERSED IN PART, VACATED IN PART, AFFIRMED IN PART, AND REMANDED.
NOTES
[1] Additionally, although the action for involuntary liquidation of the corporation cannot be classified as an action based on a direct loss suffered by the plaintiff, we observe that by law such an action can be brought by a shareholder individually. See La. R.S. 12:143(B)(1).
[2] Jonathan Smith testified that after plaintiff was fired, another authorized agent was not hired to replace plaintiff in performing background checks for MSI. He further testified that the defendants attempted to sell the background check business, but claimed it was useless because "it's all been stolen." He did acknowledge that a list of names of "every nursing home and home health" agency in the state was sold to a man in Lafayette, whom they later learned was not an agent authorized to perform background checks. At trial, it was established that MSI engaged in performing four principal business operations: (1) background checks; (2) flu shots; (3) drug testing; and (4) CPR. By an act of sale dated April 18, 2006, MSI sold its CPR and drug testing operations to Paige One Medical, L.L.C. and Paige One Medical, L.L.C. also assumed MSI's lease of an office space that was the official business address for MSI.
[3] A copy of such an application was introduced into evidence by the defendants, and the salutation on the form reads: "TO: Medical Systems Incorporated d/b/a Ernest Freeman III, Authorized Agency." While plaintiff stated that he could not remember if he performed the background check pursuant to the application when cross examined about the application by counsel for the defendants, he acknowledged that MSI could not have processed the application because the application was addressed, in part, to him as "Ernest Freeman the authorized agency," so he had to perform the work. A review of EF Research, LLC's client list revealed that the company that submitted the application was a client of EF Research, LLC.
[4] According to Jonathan Smith's testimony, plaintiff resigned as a board member of MSI on April 10 or 12, 2006.